**DETROIT EDISON COMPANY;** Duke Power Company; Gulf Power Company; Kansas Gas & Electric Company; Mississippi Power & Light Company; Pacific Gas and Electric Company; Potomac Electric Power Company; San Diego Gas & Electric Company; Savannah Electric and Power Company; South Carolina Electric & Gas Company; Southern California Edison Company; Southwestern Electric Power Company; Wisconsin Power & Light Company; and Wisconsin Public Service Corporation, Plaintiffs,

v.

**PACIFIC INSURANCE COMPANY, Defendant.**

No. C–87–878–G.

United States District Court, M.D. North Carolina, Greensboro Division.

July 30, 1990.

288

John L. Sarratt, William G. Ross, Jr., James W. Miles, Jr., Greensboro, N.C., for plaintiffs.

J. Reed Johnston, Jr., Frederick K. Sharpless, Greensboro, N.C., for defendant.

James W. Miles, Jr., Greensboro, N.C., for plaintiff, Potomac Elec. Power Co.

## MEMORANDUM ORDER

TILLEY, District Judge:

This dispute centers on the responsibility for the clean-up costs of the premises of a company that abandoned several million pounds of toxic waste. The case stands before the Court on cross motions for summary judgment. For the reasons which follow, the Plaintiffs' motion for summary judgment is DENIED and that of Defendant is GRANTED.

### I.

Plaintiffs in this action are various enterprises which produce toxic wastes in the form of PCBs and PCB-contaminated equipment, as a result of their operations. Plaintiffs engaged the services of SED,

Inc. ("SED") to remove PCB filled capacitors and related PCB material from their premises and dispose of it in a safe and legal manner. In the course of its business, SED obtained both General Liability Insurance and the policy in question. This policy is entitled, "Environmental Protection Liability." The initial policy was purchased in 1982 and extended at each end of a term into the year in question.[1]

In the spring of 1985, SED became unable to continue its operations or otherwise to dispose of the materials that had accumulated in its facilities in Greensboro. At that time, PCB contaminated materials were dangerously stacked in the warehouses and left out in open truck trailers on the premises.

As generators of the toxic waste in question, Plaintiffs to this action and other customers of SED were identified by the EPA as potentially responsible parties to the environmental hazard presented by the abandoned sites. The parties pooled their resources and had the site decontaminated.

In an attempt to recoup clean-up costs of $5,483,583.72,[2] the Plaintiffs filed this claim against SED and Pacific Insurance, as carrier of the Environmental Protection Liability Policy. SED was subsequently dropped as a party due to its insolvency.

### II.

Any discussion of the merits of this case must be preceded by a decision of what law to apply. This dispute focuses on the interpretation of the insurance policy between SED and Pacific Insurance. The jurisdiction of this Court, however, is not based in diversity, but on a federal question under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA").

Neither party contends that the existence of the federal statute should indicate that Congress meant to have federal law applied to the interpretation of insurance con-

---

1. The parties do dispute the date of cancellation of this policy. The Court, however, finds it unnecessary to decide this aspect of Pacific's defense.

2. Total clean-up costs were $6,052,660.33. The amount sought represents the liability of Plaintiffs and their assigns.

tracts in this context. In fact, it is clear that state law is properly applied to the substantive aspects of this dispute. *See e.g., Maryland Casualty Co. v. Armco, Inc.*, 822 F.2d 1348 (4th Cir.1987) (applying Maryland law). The existence of jurisdiction under the federal statute, however, profoundly affects the selection of the choice of law rules to determine which of the state laws is most appropriate.

Because this case is not founded in diversity, the rule in *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), does not bind this Court. No clear *Klaxon* -type rule exists for federal courts sitting in non-diversity cases involving state law issues. *See, e.g.*, 1A–Pt2 *Moore's Federal Practice* ¶ 0.325 (1990). Even in cases where the federal law is found to embody or to incorporate state law, a decision to use state choice of law rules would seem only to beg the question. Use of any state's choice of law rules would be a choice of law decision itself. When the parties and properties are as far flung as in this case, any one of a number of states could have interests in having their law applied. Use of the forum state's choice of law rules, moreover, would be nothing less than arbitrary without the *Erie* foundation in *Klaxon*.

■ For these reasons, the Court finds that the proper approach appears in *Edelmann v. Chase Manhattan Bank, N.A.*, 861 F.2d 1291 (1st Cir.1988) (Wisdom, J., sitting by designation). In *Edelmann*, the court held that federal courts, not sitting in diversity, should apply a federal common law of conflicts to select the proper state law. In determining the federal common law, the court relied on the principals in the Restatement (Second) of Conflict of Laws.

■ Use of the factors either in section 193 (contracts of insurance) or 188 (general contract considerations) do not make the choice of law in this matter clear. The parties to the agreement are located in Wisconsin and California, the contract was entered into in New York, and the insured premises are in North Carolina, Wisconsin and Ohio. The parties, here, however, contend the choice is only between the laws of

New York and North Carolina. The Court, nevertheless, finds that the choice between the laws of these two fora does not change the substantive decision made in this case.

The Court, however, does find that if such a choice were necessary that the law of New York should be applied. While North Carolina does have a significant interest because of the location of the contaminated facility, insured interests were in other states as well. The expectations of the parties could not have been that the contract be subject to varying interpretations dependent only upon the location of an occurrence forming the basis for a claim.

### III.

Pacific first declines coverage of the expenses of this clean up on the basis that the policy only includes "... sums which the Insured shall become legally obligated to pay for *damages*...." Insurance Policy at 1 (emphasis added). Pacific argues that "damages" refers only to moneys paid as the result of legal, rather than equitable, remedies and that clean-up costs under CERCLA have clearly been held to be equitable under federal law.

Plaintiffs concede to the correctness of the characterization of the nature of the remedy. The sharp conflict, however, exists over the proper interpretation of "damages" under the applicable state law. If this case were to be decided under North Carolina law, the resolution of this portion of the dispute would be simple. In *C.D. Spangler Construction Co. v. Industrial Crankshaft and Engineering Co., Inc.*, 326 N.C. 133, 388 S.E.2d 557 (1990), the North Carolina Supreme Court held that "damages" was to be given a nontechnical meaning and to include the sums payable due to an award of either legal or equitable remedies.

The New York law, which seems more relevant to this case, however, is far from clear. In fact, the only decisions from the state courts in this regard were made by Supreme Courts. Use of these lower court decisions to predict the law of New York

would engage this Court in an undesirable amount of speculation. For this reason, and because this matter may be resolved on other, more firm grounds, this Court will decline to hypothesize about the future findings of the New York Court of Appeals.

## IV.

■ Pacific next contends that coverage does not extend under Insuring Agreement "A" of the Policy because the injury suffered does not qualify as "personal injury," "property damage," or "impairment or diminution of or other interference with any other environmental right or amenity protected by law."[3] Plaintiffs do not claim either personal injury or property damage, but rather claim that they have been deprived of an environmental right.

Plaintiffs' argument seems to be able to be boiled down to the statement that because they have a statutory right under the federal statutes against SED and the statute in question was promulgated to protect the environment, they have an "environmental right" which Pacific is bound to cover. While this argument is not completely specious, its conclusion flies in the face of the Policy read as a whole and the ordinary meaning to be ascribed to the terms of the Policy.

The Court finds that the term "environmental right" in the context of the insurance policy in question relates only to damage done to third parties that has not been traditionally categorized as personal injury or property damage, but is a legally protected right that could be violated in the type of enterprise in which SED was engaged. The Court envisions these rights as those of the genre recognized in nuisance actions, for example.

■ The Court finds that the Plaintiffs' argument that these nuisance-type injuries are encompassed solely in the word "amenity" as it is used in the same phrase strains logic. Given that personal injury and property damage were each accorded their own subsection, the conclusion that damage to other amenities and CERCLA liability were listed in the same subsection does not seem consistent with the pattern of drafting.

The Court's interpretation of the language of the Policy also conforms with the other types of insurance carried by SED and the premium paid by SED on the Pacific policy. In addition to the Environmental Liability Protection policy with Pacific, SED also carried a General Liability Coverage policy with Great American and an excess liability policy with Fireman's Fund. Both of these policies contained special exclusions for damage caused by pollution. These exclusions went beyond the normal "pollution exclusion" and did not even cover sudden and accidental occurrences. Without this type of coverage from these policies, the need for the insurance from Pacific becomes clear and the interpretation of the Court does not create duplicative coverage.

In considering the Policy as a whole, the Court finds that the premium paid on the Pacific policy does not reflect an expectation of the parties that Pacific could be held responsible for the CERCLA clean-up costs in question. A sixteen thousand dollar premium does not adequately reflect the exposure that an insurance company would face if held accountable for the clean-up costs of an abandoned property.

As a result, the Court finds that the Plaintiffs did not suffer a violation of one of their "environmental rights" when they were forced to assume the costs of the clean up at the North Carolina locations of SED.

**3.** Insuring Agreement "A" reads:
To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay for damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR WITHIN THE DISCOVERY PERIOD, IF APPLICABLE, FOR:
1. Personal Injury

2. Property Damage
3. Impairment or diminution of or other interference with any other environmental right or amenity protected by law;
caused by Environmental Impairment and arising out of or in the course of the Insured's business and/or locations both as specifically designated in the Policy Declaration.

## V.

The Plaintiffs also assert that Pacific is obligated to provide coverage pursuant to Insuring Agreement "B" of the Policy as well. This section reads:

The Insurer shall further reimburse the Insured for costs and expenses of operations designed to remove, neutralize or clean up outside of the Insured's premises any substance released or escaped which had caused Environmental Impairment, or could cause Environmental Impairment if not removed, neutralized or cleaned up, to the extent that such costs and expenses have been incurred or have become payable by the Insured as a result of a legal obligation or in an endeavor to avert a loss covered by this policy, provided that such costs and expenses, except in respect of emergency measures undertaken to avert loss, are incurred with prior written consent of Insurer, such consent not to be unreasonably withheld.

Insurance Policy, at 1.

The Plaintiffs argue that the materials in the warehouse and the trailers fit within this section because of the danger of off site contamination posed by their condition of disregard. Because of the undesirability of saying that damage must actually occur, Plaintiffs contend that the Policy should cover preemptory on-site clean ups.

This assessment of the meaning of the Agreement, however, again fails to read this Agreement in context with the remainder of the contract. The Court understands that Insuring Agreement "A" of the Policy is designed to cover those aspects of SED's operations that occurred at the sites listed on the Policy and the damage that might be done to SED's physical neighbors. Agreement "B" extends the coverage of Pacific to cover the aspect of SED's business which included the transport of PCB contaminated materials from its customer's places of business to its own facilities. This interpretation embodies the plain meaning of the phrase "outside of the Insured's premises."

The losses incurred by Plaintiffs do not fall within the unambiguous meaning of the Policy. Under the law of either of the relevant states, no presumption of coverage attaches to unambiguous clauses or policies. *See, e.g., Fidelity Bankers Life Insurance Co. v. Dortch*, 318 N.C. 378, 348 S.E.2d 794, 796 (1986) ("Only when the contract is ambiguous does strict construction become inappropriate."); *Moshiko, Inc. v. Seiger & Smith, Inc.*, 72 N.Y.2d 945, 529 N.E.2d 420, 533 N.Y.S.2d 52 (1988) (clear insurance policies are enforced as written).

## VI.

Defendant also makes claims that coverage should be denied on the basis of exclusions within the Policy and a failure by the Plaintiffs to lodge a claim before the cancellation of the Policy. Because these matters are unnecessary to the Court's decision, these arguments have not been considered.

## VII.

Therefore, the Defendant's motion for summary judgment is GRANTED. The Plaintiffs' motion for summary judgment is DENIED.