**AETNA CASUALTY & SURETY CO., Plaintiff,**

**v.**

**DOW CHEMICAL CO., Defendant.**

No. 93–73601.

United States District Court,
E.D. Michigan,
Southern Division.

April 7, 1995.

Charles W. Browning, Detroit, MI.

Peter Kupelian, Southfield, MI.

Steven Berry, Holland, MI.

Linda Orlans, Detroit, MI.

Elizabeth Jozefowicz, Chicago, IL.

Ronald Rice, Southfield, MI.

Harrison Stackpole, Troy, MI.

Michael Foradas, Chicago, IL.

Vicky Kaiswer Russell, Chicago, IL.

Charles Bergen, Chicago, IL.

John F. Altur, Jr., New York City.

John Milan, Troy, MI.

Roger Warin, Washington, DC.

Gary Eller, Detroit, MI.

Dale Thornsjo, Minneapolis, MN.

Steven Hickey, Detroit, MI.

Gregory Smith, Dow Chemical, Midland, MI.

Michael Thoits, Bloomfield Hills, MI.

Robert Johnson, Chicago, IL.

Michelle Enright, Minneapolis, MN.

James Case, Detroit, MI.

Paul Koepff, New York City.

Jack Kalmink, Detroit, MI.

Fred Northcraft, Kansas City, MO.

Charles C. Cheatham, West Bloomfield, MI.

Louis G. Adolfsen, New York City.

Stephen M. Kelley, Detroit, MI.

Linda M. Orlans, Troy, MI.

**OPINION AND ORDER ACCEPTING AND ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION; DETERMINING THAT MICHIGAN LAW APPLIES; AND DISMISSING COUNTS X, XI, AND XII OF DOW'S FIRST AMENDED COUNTERCLAIM AGAINST FIREMAN'S FUND**

EDMUNDS, District Judge.

This matter came before the court upon Defendants Fireman's Fund and its subsidiaries, Associated Indemnity Corporation and The American Insurance Company (collectively, "Fireman's Fund") motion to partially dismiss Dow's claims against Fireman's Fund. The court referred the motion to the Magistrate for a report and recommendation. On October 19, 1994, the Magistrate filed his report, recommending that the court apply Michigan law and that the court grant Fireman's motion for partial dismissal. For the reasons stated below, the court hereby ac-

cepts and adopts the Report and Recommendation, finds that Michigan law applies, and dismisses Counts X through XII of Dow's First Amended Counterclaim.[1]

## I. Facts

Dow Chemical Company is a Delaware corporation with its principal place of business in Michigan. Dow Corning, Inc. is a Michigan corporation with its principal place of business in Michigan. Dow Chemical and Dow Corning (collectively, "Dow") have been the target of environmental contamination claims in various cases across the United States and in Canada. Dow carries numerous liability insurance policies. One insurer, Aetna Casualty and Surety Company ("Aetna"), filed this declaratory action against Dow, requesting that the court determine the rights and liabilities of the parties under the insurance contract for environmental claims that Dow submitted to Aetna. Aetna also named forty-eight other insurance companies that had issued primary or excess liability policies to Dow because there were similar disputes between Dow and its other insurers. The environmental claims arise from approximately 350 locations in forty-three states (including Michigan) and five Canadian provinces.

One of the other insurers was Fireman's Fund. Fireman's Fund is incorporated in California, and its principal place is there. Dow and Fireman's Fund dispute the extent to which the insurance policies require Fireman's Fund to defend and to indemnify Dow in various environmental claims against Dow; Dow and Fireman's Fund both seek a declaration of their rights and responsibilities under the policies.

Fireman's Fund provided liability insurance to Dow from 1956 to 1976 via six successive insurance policies. In 1976, Fireman's Fund cancelled the policy. In the late 1980's, Dow began submitting environmental claims to Fireman's Fund for coverage; the Fund assigned the last day of its last policy, March 31, 1976, as the date of loss for these claims.

The 1976 contract provided that Dow pay a $150,000 deductible and a 16.7% claims handling fee. Prior insurance contracts did not require payment of this deductible or handling fee. Dow disputed the assigned date of loss, claiming that Fireman's Fund should have assigned the losses to previous policies, policies without a deductible or handling fee. Dow contends that Fireman's Fund acted in bad faith by assigning the date of loss as March 31, 1976, and as a result, by paying out less money and receiving more money in fees than it should have. Thus, Dow filed a claim against Fireman's Fund, alleging bad faith breach of contract (Count X), tortious bad faith (Count XI), and unjust enrichment (Count XII).

Fireman's Fund filed a motion to dismiss Counts X through XII, because Michigan law does not recognize these causes of action based on the Fund's alleged conduct; it only recognizes a breach of contract action. Dow contends that if Michigan law is applied, under the circumstances of this case, Michigan law would recognize these claims against the Fund. Dow further argues that California law recognizes these cause of action and that California should govern its claims against Fireman's Fund.

The issue of conflicts of law previously was raised in litigation over Fireman's Fund insurance policies held by Dow. In *Dow Chemical Co. v. Associated Indemnity Corp.*, No. 85–10037–BC (E.D.Mich.) (J. Churchill) (hereinafter "the *Sarabond* litigation"), the choice of law issue arose in a contract dispute between Dow, Fireman's Fund, and excess insurers. The excess insurers argued that the law of the states where the underlying claims were pending should apply.[2] Fireman's Fund and Dow agreed that, under the First Restatement of Conflicts of Law, Michigan law should apply. Dow argued that the

---

1. The court refers to the numerical designation given to these counts in Dow's First Amended Counterclaim, filed January 12, 1995. These counts were originally numbered Count IX (bad faith breach of contract, Count X (tortious bad faith), and Count XI (unjust enrichment) in Dow's Counterclaim against Aetna and Cross

Claim against Fireman's Fund filed November 24, 1993.

2. The excess insurers claimed that they were not obligated to indemnify Dow for punitive damage awards in underlying claims.

Fireman's Fund insurance policies were made in Michigan and were to be performed in Michigan. (Fireman's Fund's Response to Dow's Objections, Ex. E–3 Dow's Statement of Facts and Law). The court held that Michigan law applied. *See, e.g.,* Fireman's Fund's Response to Dow's Objections, Ex. E–7 Memorandum Opinion on Punitive Damages; *Dow Chemical Co. v. Associated Indemnity Corp.,* 724 F.Supp. 474, 478 (E.D.Mich.1989) (all parties agree that Michigan law applies to contract interpretation).

The court referred the Fund's motion to dismiss to the Magistrate. On October 19, 1994, the Magistrate issued his report and recommendation, recommending that the motion be granted. Dow objected to the recommendation, and Fireman's Fund responded to the objections. The court ordered supplemental briefs regarding what law applied, and the parties filed supplemental briefs. Oral argument was held on February 7, 1995.

Dow argued that the choice of law issue could not be decided on the present record. Thus, at the hearing on February 7, the court ordered more supplemental briefs. The court indicated to the parties that it was necessary to determine the conflict of laws issue prior to ruling on the Fireman's Fund motion to dismiss.[3] The court indicated that while its determination of the conflicts of law issue only addresses the litigation between Dow and Fireman's Fund, the court's decision will influence this litigation in its entirety. Fireman's Fund, Dow, and Aetna filed supplemental briefs, and the matter is now at issue.

## II. Choice of Law

■ Federal courts sitting in diversity must apply the conflicts of law rules of the state in which they sit. *Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 491, 61 S.Ct.

1020, 1020, 85 L.Ed. 1477 (1941); *Korzetz v. Amsted Indus., Inc.,* 472 F.Supp. 136, 138 (E.D.Mich.1979). Thus, this court must look to Michigan rules regarding conflicts of law.

Preliminarily, it should be noted that the determination of which law applies is often outcome determinative. In this case, as discussed below, Michigan does not recognize the claims filed by Dow against Fireman's Fund, whereas California does. Numerous other issues as well will be influenced by the determination of which state's law applies. For example, Fireman's Fund contends that the date of damage, i.e., the "manifestation of the injury," for the claims was after 1976 and that assignment of the date of loss to the last day of the last policy was appropriate. Dow contends that the triggering event for coverage is "injury in fact," which for certain claims occurred prior to the 1976 policy. Whether the manifestation of injury or injury in fact approach governs depends on state law.

### A. Michigan Conflicts of Law Rules in Contract Actions

■ Count X for bad faith breach of contract and Count XII for unjust enrichment are actions based in contract law.[4] Thus, state conflicts of law governing contracts applies. In a diversity case, if the forum state's highest court has not addressed an issue, the federal court must determine what the state's highest court would do if faced with the issue. *Grantham & Mann, Inc. v. American Safety Prods., Inc.,* 831 F.2d 596, 608 (6th Cir.1987).

■ Michigan courts have traditionally followed the First Restatement of Conflict of Laws. Under the First Restatement, the validity and construction of a contract is controlled by the law of the place where the

---

**3.** On April 29, 1994, the court entered Case Management Order 2, which provided:

Except by agreement of the parties or order of the Court, no dispositive motions other than the earlier-filed motion by Fireman's Fund shall be filed by any party until the Court has ruled on the choice of law issue. . . .

**4.** Under California law, breach of duty of good faith and fair dealing by an insurer gives rise to a tort claim. Thus, tort conflicts of law rules ap-

ply. Douglas Houser, *Choice of Law for Bad Faith Insurance Claims,* XXX Tort & Ins. L.J. Fall 1994, at 37 (Exhibit A to Dow's Objections). Even if the court were to analyze these causes of action under Michigan rules regarding conflicts of law in tort actions, the analysis would follow the analysis made regarding the tortious bad faith claim with the same result. That is, the court would find that Michigan law governed.

contract was executed. Restatement (First) Conflict of Laws § 311 (1934); *Van Arnem Co. v. Manufacturers Hanover Leasing Corp.,* 776 F.Supp. 1220 (E.D.Mich.1991); *Rubin v. Gallagher,* 294 Mich. 124, 292 N.W. 584 (1940). Under the First Restatement, Dow concedes that Michigan law applies.

Dow contends, however, that in this case the Second Restatement applies, citing recent case law. *Chrysler Corp. v. Skyline Industrial Services, Inc.,* 199 Mich.App. 366, 502 N.W.2d 715 (1993); *Lifetime Doors, Inc. v. Liberty Mut. Ins. Co.,* No. 92–72142 (E.D.Mich. Oct. 25, 1993) (Dow's Second Supplemental Brief, Ex B); *CPC International, Inc. v. Aerojet–General Corp.,* 825 F.Supp. 795 (W.D.Mich.1993); *see also Aetna v. Diecast Corp.,* No. 93–65485–CK (Jackson County Cir.Ct. March 11, 1994) (court finds Michigan law applies under First or Second Restatement) (Dow's Supplemental Brief, Ex. C). Dow argues that as the courts found in *CPC* and *Lifetime Doors,* the complexities inherent in insurance coverage disputes for environmental contamination claims demand the more flexible Second Restatement analysis.

Dow's assertion that the Second Restatement should apply is well founded. Support is found in the Michigan Supreme Court's recent decision in *Chrysler,* a decision pending during the time this case was briefed. The Supreme Court indicated that in cases "which demand a more extensive review of the relative interests of the parties and the interested states," the inflexible First Restatement rule is outmoded and the Second Restatement should apply. *Chrysler Corp. v. Skyline Industrial Services, Inc.,* 448 Mich. 113, 528 N.W.2d 698, 703 n. 28 (S.Ct.1995) (reversing court of appeals on other issues).

> [Sections] 187 and 188 of the Second Restatement, with their emphasis on examining the relevant contacts and policies of the interested states, provide a sound basis for moving beyond formalism to an approach more in line with modern-day contracting realities.

*Id.* Based on the *Chrysler* decision, it is likely that the Michigan Supreme Court would apply the Second Restatement to determine the applicable law in this case.

Thus, this court will apply the Second Restatement.

Section 188 of the Second Restatement provides that courts apply the "most significant relationship" test to determine what law applies to a contract claim:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has *the most significant relationship to the transaction and the parties under the principles stated in § 6.*
>
> (2) In the absence of an effective choice of law by the parties ..., the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place of contracting;
>
> (b) the place of negotiation of the contract;
>
> (c) the place of performance;
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicil, residence, nationality, place of incorporation, and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
>
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203.

Restatement (Second) Conflict of Laws § 188 (1971) (emphasis added). Section 6 sets forth general "choice-of-law principles":

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Id.* § 6.

Section 193 of the Second Restatement deals specifically with insurance contracts, providing that the principal place of the insured risk is the most important factor.

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*Id.* § 193. The policy behind the Second Restatement is a preference that only one set of laws governs an insurance contract. *United Brass Works, Inc. v. American Guarantee and Liability Ins. Co.,* 819 F.Supp. 465, 469 (W.D.Penn.1992), *aff'd,* 989 F.2d 489 (3d Cir. 1993) (Table); *see also Detroit Edison v. Pacific Ins. Co.,* 742 F.Supp. 287, 289 (M.D.N.C.1990) (parties to insurance contract reasonably expect that contract will be interpreted according to law of single state), *aff'd,* 944 F.2d 901 (4th Cir.1991) (Table).

Dow argues that California law applies because the most important factor in a site regarding insurance coverage for environmental contamination is the location of the contaminated site. *CPC,* 825 F.Supp. at 808–09. The location of the sites at issue here is California.

In *CPC,* the court applied section 188 of the Second Restatement and held that the location of the site was the most important factor because that state has the most important interests at stake. The court relied on *Johnson Matthey, Inc. v. Pennsylvania Mfr's Assoc. Ins. Co.,* 250 N.J.Super. 51, 593 A.2d 367 (App.Div.1991). In *Johnson Matthey,* the dump site was located in New Jersey. The court explained why it found that New Jersey's interest was paramount:

The existence or absence of insurance proceeds can very well determine whether or not a waste site is remediated or a toxic tort victim is compensated. Not every pollutor or other person responsible for an environmental wrong is financially sound, or is anxious to make personal assets available to satisfy adjudicated liabilities. New Jersey's paramount interest in the remediation of toxic waste sites, and in the fair compensation of victims of pollution, extends to assuring that casualty insurance companies fairly recognize the legal liabilities of their insureds.... The gravity of the problem is out of doubt; the necessity of finding solutions is manifest. In the effort to find solutions, financial resources matter.

250 N.J.Super. at 57–58, 593 A.2d at 370–71; *accord A. Johnson & Co., Inc. v. The Aetna Cas. & Sur. Co.,* 741 F.Supp. 298, 301 (D.Mass.1990), *aff'd,* 933 F.2d 66 (1st Cir. 1991); *In re Environmental Ins. Declaratory Judgment Actions,* No. UNN–L–8573–89 (N.J.Super.Ct.Law Div. May, 11, 1992) (following *Johnson Matthey*) (Dow's Second Supplemental Brief, Ex. A.).[5]

*CPC* is not persuasive for a number of reasons. In *CPC,* the court looked only to the site of the contamination and failed to apply the other Restatement factors set forth in section 188 and section 6. The Second Restatement does not provide that one factor be given superseding weight.

Judge Hillman [in *CPC*] and the New Jersey Court [in *Johnson, Matthey*] have created a new Restatement, without any substantiation in law, that a court is to look to a critical factor in hazardous waste cases to be the location of the dump site and that this would be a paramount interest. This

---

5. *Cf. G. Heileman Brewing Co. v. Royal Group, Inc.,* 1991 WL 120366 (S.D.N.Y. June 21, 1991) (applying interest analysis, not Second Restatement, and finding law of site applied) (Dow's Second Supplemental Brief Ex. F).

is a new Restatement created from whole cloth. *Aetna v. Diecast,* No. 93–65485–CK (quotations omitted).[6] Moreover, the Restatement directs courts to determine the state that has the most significant relationship to the parties and the transaction, not the state with the most significant relationship to the injury for which insurance coverage is sought. *Id.*

*Johnson Matthey* and most other courts that have held that the law of the state where the contamination is located applies, have based their decision at least in part on section 193. *See, e.g., Lifetime Doors,* No. 92–72142; *Curran Composites, Inc. v. Liberty Mut. Ins. Co.,* 874 F.Supp. 261 (W.D.Mo. 1994); *Burlington N.R.R. Co. v. Allianz Underwriters Ins. Co.,* 1994 WL 637011 (Del.Super.Ct. Aug. 25, 1994); *In re Clark Equip. Co. v. Liberty Mut. Ins. Co.,* 1994 WL 466325 (Del.Super.Ct. Aug. 1, 1994).

These cases are unpersuasive because section 193 does not provide that the location of the risk is a key factor where there is no *principal* location of the risk. Comment (a) to section 193 explains that when there is no principal location of a risk, the location of the risk has little influence over which law should apply. *See also* § 193 Comment (b) (location of the risk has less significance where the policy covers group of risks scattered throughout two or more states). In those cases, courts should apply the factors set forth in section 188 and section 6. *Fallon v. Superior Chaircraft Corp.,* 884 F.2d 229 (5th Cir.1989); *Sandefer Oil & Gas v. AIG Oil Rig of Texas Inc.,* 846 F.2d 319 (5th Cir. 1988); *National Union v. Rhone–Poulenc,* No. 870–SE–11–1–CV (WBC) (Del.Super.Ct. Aug. 17, 1992) (Dow's Second Supplemental Brief Ex. G).

Section 193 also provides that the law of the state "which the parties understood to be the principal risk" applies. When insurance policies provide liability coverage without regard to location of the risk, location of the risk is not a matter of the parties' understanding. *Sandefer,* 846 F.2d at 324.

Comment (f) to section 193 also addresses the issue of multiple risk policies where the risk is in scattered locations. Comment (f) provides that a multiple risk policy should be treated like a separate policy for each state where the policy incorporates state statutory form:

> A special problem is presented by multiple risk policies which insure against risks located in several states. A single policy may, for example, insure dwelling houses located in states X, Y, and Z. These states may require that any fire insurance policy on buildings situated within their territory shall be in a special statutory form. If so, the single policy will usually incorporate the special statutory forms of the several states involved. Presumably, the courts would be inclined to treat such a case, at least with respect to most issues, as if it involved three policies, each insuring an individual risk. So, if the house located in state X were damaged by fire, it is thought that the court would determine the rights and obligations of the parties under the policy, at least with respect to most issues, in accordance with the local law of X. In any event, that part of a policy which incorporates the special statutory form of a state would be construed in accordance with the rules of construction of that state.

Many courts that have adopted the law of the site rule in contamination cases have interpreted Comment (f) broadly to mean that when more than one risk is insured, the policy should be interpreted as separate policies for each risk and thus that the law of the site should apply. These cases engage in little or no analysis and fail to reconcile Comments (a) and (b) with their broad interpretation of Comment (f). *See, e.g., Lifetime Doors,* No. 92–72142; *Curran Composites,* 874 F.Supp. 261; *In re Clark Equip.,* 1994

---

**6.** The *Johnson Matthey* court did not base its finding exclusively on the concept that the state where the dump site is located has the supreme interest. *Johnson Matthey* also looked at other factors and found that there was a dearth of significant contacts with any other state. The court held that the place of the making of the contract and the payment of the premiums was insignificant. "A phone call, a signature, the typing and mailing of a preprinted insurance policy, the issuance and deposit of a premium check do not add up to significant Pennsylvania roots." 250 N.J.Super. at 59–60, 593 A.2d at 372.

WL 466325; *Stepan Co. v. Admiral Ins. Co.,* No. 93CH2348 (Ill.Cir.Ct. Jan. 1994); *cf. Burlington,* 1994 WL 637011 (because damages at issue were environmental, location of risk was pre-eminent even where policy covers risks scattered in different states).

In order to interpret Comments (a), (b), and (f) and also give effect to the language of each Comment, Comment (f) must be interpreted strictly. It does not provide that wherever more than one risk is insured, the policy should be interpreted as separate policies for each risk. It provides only that when a multiple risk policy incorporates state statutory form, it should be treated like a separate policy for each location in order to give effect to the state statutory requirements. *Aetna v. Diecast,* No. 93–65485–CK.

In this case, Comment (f) does not apply, as Dow does not allege that the Fireman's Fund policy incorporates state statutory form that must be interpreted in accordance with various state laws. Further, because the Fireman's Fund policy covers Dow's liability and such liability is spread throughout the United States and Canada, there is no principal location of the risk and section 193 does not apply. The choice of law determination must be made under sections 188 and 6.

Although *CPC* applied section 188 (not section 193) and still found the interest of the site location to be paramount, other courts have rejected this concept. While the state where the environmental contamination is located has an interest in remediation and compensation of tort victims, the issue in an insurance policy dispute is not remediation or compensation, it is insurance coverage. *Village of Morrisville Water & Light Dept. v. United States Fidelity & Guar. Co.,* 775 F.Supp. 718, 723 (D.Vt.1991).[7] Further, the nature of the liability is not an appropriate consideration under the Restatement. *See Johnson Matthey,* 250 N.J.Super. at 56, 593 A.2d at 370 (discussing lower court opinion).

Moreover, the application of the law of the site creates the result that one insurance policy could be interpreted differently in different locations. Courts dispute whether this conflicts with the interests of certainty, predictability, and uniformity, all basic conflicts of law principles set forth in section 6 of the Second Restatement.

The *Johnson Matthey* court was not bothered by the problem that an insured's rights under an insurance policy would expand and contract depending on the state where the claim arose. The court opined that uniform interpretation is an elusive goal.

> [T]here are two opposing axes of possible uniformity, and it is impossible to line up along both of them at the same time. One axis is uniform nationwide interpretation of a single policy's language.... The opposing axis is uniform interpretation that is site-specific.

250 N.J.Super. at 60–61, 593 A.2d at 372. The court elected the latter type of uniformity. "If uniformity is achieved on a site-specific basis, the uniformity will relate to a particular legal proceeding and may aid in its resolution." 250 N.J.Super. at 64, 593 A.2d at 374.

Uniformity on a site specific basis does not aid in the resolution of legal disputes such as this one where there are a multitude of sites located in forty-three and five Canadian provinces. The better reasoned view is that applying the law of the site creates anomalous results in conflict with the expectations of the parties and the commercial world.

> While not intending to deprecate the legitimacy of local concern for and control over its own environmental contamination, we nevertheless cannot conceive that the operative contract language in a single set of insurance policies issued by a group of insurers for the purpose of providing integrated comprehensive coverage for nationwide risks could mean something different in every state of the union....
>
> In our view, the notion that the insured's rights under a single policy vary from state to state depending on the state in which the claim invoking the coverage arose contradicts not only the reasonable expectation of the parties but also the common understanding of the commercial com-

---

7. Dow has not suggested that it is financially unable to pay for the remediation of the contami-

nated sites in the event that insurance does not cover its liability.

munity. It also seems to us anomalous, in conflict-of-law terms, to suggest that more than one body of law will apply to a single contract.

*Westinghouse Elec. Corp. v. Liberty Mut. Ins. Co.,* 233 N.J.Super. 463, 476, 559 A.2d 435, 441–42 (App.Div.1989); *accord United Technologies Corp. v. Liberty Mut. Ins. Co.,* 407 Mass. 591, 555 N.E.2d 224 (1990).

In a complex case where many locations are involved, interpreting insurance coverage under the same policy in accordance with the various laws of the locations where the insurance claims happen to arise would result in litigation chaos. *Westinghouse,* 233 N.J.Super. at 477, 559 A.2d at 442. In *Fallon v. Superior Chaircraft,* the court found that application of the law of fifty states, several territories, and numerous countries to a liability insurance policy was unacceptable. 884 F.2d at 233. "The potential exposure to insurers caused by such an anomalous result would wreak havoc in the insurance industry." *Id.*

Dow itself has previously argued that in cases with multistate contacts, Michigan law should apply to protect Dow's need for uniformity in its insurance policies.

> Given the structure of the Dow insurance program and Dow's express desire to ensure that all losses covered by Fireman's Fund are covered by the excess [carriers] as well, here too, Dow's need for "uniformity in its contracts" favors interpreting all [of Dow's insurance] policies under Michigan law.

(Fireman's Fund's Response to Objections Ex. 3). Dow further explained, "[I]t would defy common sense, and would contravene the very purpose of Dow's insurance program to apply the law of different states to

the other [insurance] policies, particularly if such state's laws resulted in inconsistent coverage." *Id.*

Determination of each claim under each policy under the law of each site would cause a tremendous delay and would waste the resources of attorneys, clients, and the court.[8] In addition, in this case many issues may be simplified under Michigan law because the parties have already litigated contract issues under Michigan law.

Other Restatement factors also indicate that the state of Michigan has the most significant relationship with the parties and the insurance transaction in this case. A key factor in this case is that the parties reasonably expected that Michigan law would apply to their insurance disputes. Dow first obtained an insurance policy from Fireman's Fund in 1956, thirty-nine years ago. Since that time, the parties have been involved in five lawsuits regarding the insurance coverage. All of these suits involved contract disputes, and Michigan law was applied in all of the suits. Dow itself repeatedly invoked Michigan law and argued that for consistency in interpreting the contracts, Michigan law should apply. Over the years, the parties have come to expect that Michigan law governs their relationship.

Dow and Fireman's Fund's expectations are further revealed by the fact that in 1984 they entered into a forum agreement, whereby they agreed to litigate their disputes in the Eastern District of Michigan.[9] (Fireman's Feb. 21 Supplemental Brief, Ex. B) At that time, under long established law, the Eastern District would apply Michigan conflicts of law rules and under such rules Michigan followed the First Restatement. *Klaxon,* 313 U.S. 487, 61 S.Ct. 1020 (1941);

---

8. Ironically, the *CPC* court adopted the law of the site concept in order to avoid applying the law of nine different states and Bermuda. The only site at issue was located in Michigan. However, the insurance policies at issue were made in a number of different states. The court held that the First Restatement lex loci approach did not apply because "that would result in the pointless application of the law of several different forums to the numerous insurance transactions at issue here." 825 F.Supp. at 809.

9. It is clear that litigation in one mutually agreeable forum is beneficial to both parties. The resolution of common issues of law and fact in one court is most efficient. "Repeated relitigation of the common issues in a complex case unduly expends the resources of attorney and client, clogs already over-crowded dockets, delays recompense for those in need, and brings our legal system into general disrepute." *United Technologies,* 407 Mass. at 596 n. 8, 555 N.E.2d at 227 n. 8 (citing ALI, Complex Litigation Project, ch. 2, comment a, at 11 (Tent. Draft. No. 1, 1989)).

*Rubin,* 294 Mich. 124, 292 N.W. 584 (1940). The parties knew that because their contract was made in Michigan, Michigan law would apply under the First Restatement. Thus, when Dow and Fireman's Fund entered the forum agreement, they reasonably expected that Michigan law would apply.[10]

Further, the state of Michigan has a significant relationship with the parties. Dow Chemical Company's principal place of business is in Michigan. Dow Corning, Inc. is a Michigan corporation with its principal place of business in Michigan. Although Fireman's Fund is a California company, it maintains a claims and underwriting office in Michigan and it entered into the insurance policy with Dow through its Michigan agent. Dow conceded in the *Sarabond* litigation that its contract with Fireman's Fund was made in Michigan and to be performed in Michigan. Finally, Michigan has an interest in assuring that its citizens receive the contractual benefits for which they negotiated without the fear that the law of a foreign jurisdiction will invalidate them. *Meijer, Inc. v. General Star Indem. Co.,* 826 F.Supp. 241, 246 (W.D.Mich.1993).

## B. Michigan Conflicts of Law Rules in Tort Actions

■ Count XI, for tortious bad faith, is governed by Michigan conflict of laws rules applicable to tort actions. Michigan has not adopted any particular choice of law methodology and instead decides conflicts of law issues on a case by case basis. *Olmstead v. Anderson,* 428 Mich. 1, 24, 400 N.W.2d 292, 302 (1987); *In re Disaster at Detroit Metropolitan Airport Aug. 1987,* 750 F.Supp. 793, 797 (E.D.Mich.1989); *Farrell v. Ford Motor Co.,* 199 Mich.App. 81, 86, 501 N.W.2d 567 (1993), *appeal denied,* 455 Mich. 863, 519 N.W.2d 158 (1994). Under Michigan law, the law of the forum applies in tort actions,

unless there is a "rational reason" to displace it. *Olmstead,* 428 Mich. at 29–30, 400 N.W.2d at 304–05. In analyzing which state's law should apply, the court must focus on the particular interest that each state has in having its substantive law apply to the issue in question. Further, the court must consider the interests of certainty, predictability of results, ease of application, and prevention of forum shopping. *Id.* at 24, 400 N.W.2d at 302.

■ Dow argues that California law should apply to its claim that Fireman's Fund tortiously acted in bad faith. Fireman's Fund is incorporated in California, and its principal place is there. Thus, the decision to assign Dow's date of loss on its post 1976 claims to the 1976 policy was made by Fireman's Fund in California, and the claims handling charges were issue by Fireman's Fund in California.

The same analysis discussed above in the context of the significant relationship test applies here. There is no rational reason to displace the law of the forum. Michigan has an interest in assuring that its citizen, Dow, receives the insurance benefits for which it negotiated. As discussed in detail above, the interests of certainty, predictability of results, and ease of application all dictate that Michigan law applies.[11]

## III. Motion to Dismiss Filed by Fireman's Fund

### 1. Standard for a Motion to Dismiss

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that

---

**10.** Dow claims that application of Michigan law "penalizes" Dow because Dow could have brought suit against the insurers in the jurisdictions where the contaminated sites are located. Dow presumes, without justification, that the courts in all of these locations would apply the law of the site. This contention is without merit, as the courts in those locations would make a choice of law based on that state's conflicts of law rules. Moreover, with respect to Dow's dis- pute with Fireman's Fund, Dow agreed to this forum.

**11.** Fireman's Fund also argued that Dow should be judicially estopped from arguing that any law other than Michigan law applies. It is not necessary for the court to reach this issue, because under Michigan conflicts of law principles Michigan law applies.

would entitle him to relief." *In re Delorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Davis H. Elliot Co., Inc. v. Caribbean Utilities Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir.1975). A motion to dismiss a complaint for failure to state a claim should not be granted "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citations omitted).

## 1. Bad Faith Breach of Contract

Count X of Dow's First Amended Counterclaim alleges that Fireman's Fund breached the contract in bad faith, that is, it breached its duty of fair dealing by assigning the insurance claims to the last insurance policy that Fireman's Fund had issued.

 Michigan law does not recognize an implied contractual duty of good faith. *Red Cedars, Inc. v. Westchester Fire Ins. Co.*, 686 F.Supp. 614 (E.D.Mich.1988); *Dahlman v. Oakland University*, 172 Mich.App. 502, 507, 432 N.W.2d 304, 306 (1988). Where the express terms of a contract govern the disputed issue, a court should not imply a duty of good faith. *Stockdale v. Jamison*, 416 Mich. 217, 330 N.W.2d 389 (1982).

Dow concedes that this is the general rule, but argues that an insurer has an obligation to act in good faith and an insurer may be liable for consequential damages in excess of the policy amount due if the insurer acts in bad faith citing *Wendt v. Auto Owners Ins. Co.*, 156 Mich.App. 19, 401 N.W.2d 375 (1986) and *Murphy v. Cincinnati Ins. Co.*, 772 F.2d 273 (6th Cir.1985).

 As Fireman's Fund points out, Michigan case law regarding the contractual duty of good faith is limited in application. Courts have held only that an insurer has the duty to act in good faith in negotiating a settlement within the policy limits, and the duty to act in good faith in investigating and paying claims. *See, e.g., Murphy v. Cincinnati Ins.*

Co., 772 F.2d 273 (insurer has duty of good faith in investigating and paying claims);[12] *Wendt*, 156 Mich.App. 19, 401 N.W.2d 375 (insurer liable for bad faith failure to pay claim); *Commercial Union Ins. Co. v. Liberty Mut. Ins. Co.*, 426 Mich. 127, 393 N.W.2d 161 (1986) (insurer liable for bad faith refusal to settle); *Stockdale*, 416 Mich. 217, 330 N.W.2d 389 (insurer liable for bad faith refusal to settle). Dow does not claim that Fireman's Fund acted in bad faith by refusing to settle nor that it acted in bad faith in investigating or paying a claim. Dow merely claims that Fireman's acted in bad faith when it assigned the claims a loss date of 1976. This is a matter governed by the contract. Because Michigan law does not recognize a cause of action for contractual bad faith under these circumstances, Count X is dismissed.

## 2. Tortious Bad Faith

 Count XI of Dow's First Amended Counterclaim alleges that Fireman's Fund acted with tortious bad faith when it assigned Dow's claims to the 1976 policy. Michigan law does not recognize an independent tort based upon a bad faith breach of contract. "We decline to follow the California court and to declare the mere bad-faith breach of an insurance indemnity contract an independently and separately actionable tort and to thereby open the door to recovery for mental pain and suffering caused by breach of a commercial contract." *Kewin v. Massachusetts Mutual Life Ins. Co.*, 409 Mich. 401, 423, 295 N.W.2d 50, 56 (1980). An insurer may be held liable only for tortious conduct that is separable from the insurer's duties under the insurance contract. *Hearn v. Rickenbacker*, 428 Mich. 32, 400 N.W.2d 90 (1987).

 Dow's claims against Fireman's Fund are for bad faith handling of the insurance claim. Dow argues that its claim arises out of the contractual relationship, not out of the contract itself. This argument is not persuasive. Dow's allegations that Fire-

12. Note that the Michigan Court of Appeals recently rejected *Murphy*, holding that an insured may not recover attorney fees incurred as a result of an insurer's bad faith refusal to pay a claim. *Burnside v. State Farm Fire & Cas. Co.*, 208 Mich.App. 422, 528 N.W.2d 749 (1995).

man's Fund assigned an improper date of loss, applied a deductible, and charged an excessive handling fee arise from the contract itself. In other words, Dow's claims are not independent of the contract; thus, Dow has not alleged an actionable tort. Accordingly, Count XI for tortious bad faith is dismissed.

### 3. Promissory Estoppel

 Count XII alleges that Fireman's Fund was unjustly enriched due to its assignment of Dow's claims to the 1976 policy. This claim is not recognized by Michigan law, as unjust enrichment is only applied where there is no express contract between the parties. *Martin v. East Lansing School District*, 193 Mich.App. 166, 177, 483 N.W.2d 656, 661 (1992) (contract is implied only if there is no express contract covering same subject matter).

Dow argues that the "subject matter" at issue is the assignment of claims to a particular policy and that there is no express contract governing this specific subject matter. This is disingenuous. As aptly stated by Magistrate Carlson in the Report and Recommendation:

> The "subject matter" here is an insured/insurer relationship between the parties, created and governed by an express, written contract. While the Court may have to determine the intent of the parties to resolve individual questions not specifically addressed in the agreement, this does not mean that quasi-contract rules of unjust enrichment come into play for all such unsettled questions.

Report and Recommendation, p. 13. The trigger of coverage is an issue determined by the language of the contract and by contract law. *Dow Chemical*, 724 F.Supp. at 479.

The court must refer to the insurance contract to determine the appropriate date of loss for the insurance claims filed by Dow. Because of the express contract between the parties, the court may not imply a separate contract regarding the issue of which insurance claims should be assigned to which policy. Accordingly, Count XII for unjust enrichment is dismissed.

## IV. Conclusion

For the reasons set forth above, the court hereby ACCEPTS AND ADOPTS the Report and Recommendation as supplemented by this opinion. It is further ordered that Michigan law applies to the dispute between Dow and Fireman's Fund. It is further ordered that counts X (contractual bad faith), XI (tortious bad faith), and XII (promissory estoppel and unjust enrichment) of Dow's First Amended Counterclaim, filed January 12, 1995, are DISMISSED.