300 So.2d 3 (1974)
Marie GILLEN, Individually, et al., Petitioners,
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION, Respondent.
No. 44307.
Supreme Court of Florida.
July 10, 1974.
Rehearing Denied October 4, 1974.
*4 Terrell Griffin and Russell Troutman of Troutman, Griffin & Parrish, Winter Park, for petitioners.
W. Marvin Hardy, III, of Gurney, Gurney & Handley, Orlando, for respondent.
ADKINS, Chief Justice.
By petition for writ of certiorari, we have for review a decision of the District Court of Appeal, Fourth District (280 So.2d 52), which allegedly conflicts with the decision of this Court in Sellers v. United States Fidelity & Guaranty Company, 185 So.2d 689 (Fla. 1966). We have jurisdiction. Fla. Const., art. V, § 3(b)(3), F.S.A.
The facts of this cause are not complicated. Petitioners, hereinafter referred to as Gillens, took out two insurance policies with respondent, hereinafter referred to as United, and received delivery of the policies on December 16, 1969, while residents of New Hampshire. One policy (No. 29) *5 covered a Karmann Ghia; the other (No. 28) a Volkswagen bus. Both policies provided for uninsured motorist coverage of $10,000 per person and $20,000 per accident. The policy period was one year and separate premiums were paid for each policy.
In July, 1970, the Gillens moved to Florida, and after notifying United of the move, sold the Volkswagen bus and purchased a Volkswagen Squareback. United issued Policy No. 31 on the latter, cancelling No. 28. On September 7, 1970, the Gillens were involved in a serious accident in which Mr. Gillen (whose estate is co-petitioner) was killed and Mrs. Gillen was seriously injured. The accident was the result solely of the negligence of an uninsured motorist.
United refused to pay the limits on Policy No. 29, relying on an "other insurance" clause found in the policy. This clause basically provided that if the insured has other similar insurance available and applicable to an accident, the damage would be limited to the higher of the applicable limits. The Gillens assert that such a policy would be against the public policy of the State of Florida, as enunciated by this Court in Sellers, supra, and urge the Court to allow recovery on both policies.
Faced with this issue, the Circuit Court, upon findings of relevant facts, held that the Gillens were entitled to the benefits of both policies under the reasoning of Sellers, supra, and also that the application of New Hampshire law would be against the public policy of Florida. In addition to this declaratory judgment, the Gillens were awarded an attorneys' fee of $4,300.
The District Court reversed, finding that the insurance contract should be governed by the laws of the state in which the policy was delivered, that is, New Hampshire, while the issue of attorneys' fees was remanded for further consideration. Judge Mager dissented, stating that "other insurance" clauses are void and unenforceable in Florida and, since Florida was the jurisdiction having the most significant relationship to the contract, its laws should govern.
In Sellers v. United States Fidelity & Guaranty Company, supra, this Court was confronted with a similar question relating to the "other insurance" clause. Petitioner, plaintiff in the trial court, had a policy of insurance with respondent, including uninsured motorist coverage. The automobile in which she was riding was owned by one Milstead, to whom another insurance company had issued a similar policy containing an uninsured motorist provision. The limit of liability under each of the policies was $10,000 for injury to each person. The operator of the automobile which collided with the automobile in which Mrs. Sellers was riding was uninsured. The petitioner made a claim against Milstead's insurance company and settled the claim for $7,500. The petitioner then filed a claim based upon the same injuries against respondent, who then brought a suit for declaratory decree asserting that, under a provision of the policy dealing with "other insurance," it was not liable to the petitioner because there was available to her through the other insurance company similar insurance coverage against the loss.
The question before the Court was whether an automobile liability insurance carrier providing coverage against injury by a uninsured motorist in accord with the requirements of Fla. Stat. § 627.0851, F.S.A., can accept a premium for such coverage and then deny coverage on the ground that the insured had other similar insurance available to him. We held
"There appears no latitude in the statute for an insurer limiting its liability through `other insurance'; `excess-escape' or `pro rata' clauses, as attempted in Condition 5. If the statute is to be meaningful and controlling in respect to the nature and extent of the coverage and to the sources of recovery and subrogation of the insurer, all inconsistent clauses in the policy to the controlling *6 statutory language such as are contained in Condition 5 must be judicially rejected." 185 So.2d 689, at 690.
We now see no reason to alter our position on the subject of "other insurance" clauses.
United points to the wording of Fla. Stat. § 627.0851, F.S.A., which refers to insurance "delivered or issued for delivery in this state" and insists that the insurance policy (No. 29) was delivered in New Hampshire. While it is true that the Legislature in its language thus limited the application of the statute, there is no indication that the Legislature necessarily meant to exclude cases such as the one sub judice. Given the rationale behind this Court's decision in Sellers, supra, that is, that the public policy of this State requires the elimination of "other insurance" provisions, there is no reason to limit its scope in a situation such as the present one.
United is headquartered in the State of Texas and issues policies whose coverage is applicable in all fifty states and Canada. Its specialty is active duty and retired military officers, a rather mobile group. The Gillens notified United of their move to Florida and were subsequently issued a policy (No. 31). This can be seen as an acknowledgment of domiciliary change and would indicate to United that coverage under both policies would be shifted to Florida. Yet premiums were collected on both policies by United, who now says it is liable under only one. There is nothing in law or equity which should aid an insurance company in so one-sided an arrangement.
United asks the Court to be guided by considerations of comity as laid down in Herron v. Passailaique, 92 Fla. 818, 110 So. 539 (1926), which stated that rules of comity should only be departed from to protect one's own citizens or to enforce a "paramount rule of public policy." Concerning protection of one's citizenry, it should be noted that the Gillens had purchased automobile tags, drivers' licenses, mortgaged their home in Florida and entered their children in local schools. They were in the process of establishing themselves as permanent residents of this State, and as such are proper subjects of this Court's protection from injustice or injury. While comity is in theory a beneficial exercise in interstate harmony, it may not be used for an improper purpose. The goal of comity is institutional cooperation, not private enrichment.
Respondents have placed much reliance on Aetna Casualty & Surety Co. v. Enright, 258 So.2d 472 (Fla.App.3d, 1972), which they claim stands for the proposition that Florida's public policy against "other insurance" clauses should not extend to a policy issued in another state. However, the insured individuals in that case were permanent residents of another state and the substance of that court's decision was that insufficient contact with Florida had been established to warrant the invocation of this state's public policy. For such reasons, the case sub judice is distinguishable.
Much is made by both parties of the locus of the contract. United contends that the law of New Hampshire should govern, since the contract was made and delivered in that state. The Gillens would have the court apply Section 188, Restatement of the Law, 2d, Conflicts of Law 2d (1969), which requires application of the law of the state having the most significant relationship to the transaction. This Court has never adopted this test, although consideration has been given to the subject. Hopkins v. Lockheed Aircraft Corporation, 201 So.2d 743 (Fla. 1967). Nor do we now deem it necessary to adopt or reject it, for under the preceding discussion, such a determination is unnecessary to the resolution of this cause. Suffice it to say, Florida has a significant relationship to the insurance contract at issue for the following reasons:
(1) The covered vehicles were garaged in Florida at the time of the accident, *7 with appropriate notice having been given to United;
(2) The Gillens had taken affirmative steps to establish residence in Florida;
(3) The risk of the policy was centered in Florida and only minimal contact with New Hampshire existed in terms of actual risk.
The only relationship with New Hampshire was established during the making of the contract. Although the place of negotiation was New Hampshire, very little importance should be attached to this fact. The Gillens merely received a standard form insurance policy from its respondent's main office in Texas which was completed and returned.
Thus, this is not an appropriate case for the application of comity principles. Generally speaking, since the purpose of comity is the fostering of amiable and respectful relations among individual states, a prerequisite for its institution should be a significant interest of the foreign state in the issue to be adjudicated. In the instant case, New Hampshire has a policy permitting "other insurance" clauses as a means of avoiding liability. Maryland Casualty Co. v. Howe, 106 N.H. 422, 213 A.2d 420 (1965) and Hackman v. American Mutual Liability Insurance Co., 110 N.H. 87, 261 A.2d 433 (1970). This policy is grounded in general on freedom of contract principles, to the extent there is no conflict with relevant state statutory authority. The New Hampshire court seemed to indicate that the main purpose of their statute was to provide protection only up to the minimum statutory limits. Florida's statute has no similarly restricted purpose and, in fact, has been interpreted in Sellers, supra, to implicitly forbid "other insurance" clauses. While it is generally undesirable to unduly criticize the decisions of a sister state, it becomes necessary to evaluate one court's position on an issue and the reasons behind it in order to accurately assess the respective states' interests. Here, the substantial interest of Florida in protecting its citizens from the use of "other insurance" clauses rises to a level above New Hampshire's interest in permitting them. Public policy requires this Court to assert Florida's paramount interest in protecting its own from inequitable insurance arrangements.
For the foregoing reasons, the decision of the District Court of Appeal is quashed and this cause is remanded to the District Court of Appeal with instructions to affirm the judgment of the trial court.
It is so ordered.
ERVIN, BOYD and McCAIN, JJ., concur.
DEKLE, J., concurs specially with opinion.
DEKLE, Justice (specially concurring):
Insofar as the majority holding is bottomed upon the distinction therein expressed between the present cause and Aetna Casualty & Surety Co. v. Enright, 258 So.2d 472 (Fla.App.3d 1972), I concur with the result and holding. I do so, however, only upon this express ground, namely, that the insureds (unlike Aetna) had, prior to the accident, become residents of Florida, the vehicles were garaged here and their insurer had been so notified, thereby placing the carrier upon notice of the application of our statute § 627.0851 as applied in Sellers; otherwise, as under Aetna, Florida's public policy against "other insurance" clauses would not extend to policies issued and delivered in another state, for the statute on which Florida's public policy in this regard is founded (§ 627.0851) is hinged upon the predicate expressed in the statute itself as to insurance "delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state." Our Florida statute cannot be engrafted upon New Hampshire legislation which that sovereign has seen fit to provide for its citizens.
*8 Where the delivery of the insurance policy is in another state upon a vehicle there, our statute would not be invoked. To hold insurers all over the United States to a blanket Florida public policy applying to foreign vehicles when non-residents happen to be traveling in Florida would completely erase the rule of comity. Apparently the majority view does not intend so to hold.
Judge Mager's studious dissent to the Fourth District opinion logically suggests that "under the `grouping of contacts' test, that the State of Florida had a more significant relationship with the dispute than the State of New Hampshire." This appears to be the factual situation here and would seem to be a sound basis on which to rest such cases in the future.
On the particular facts and narrow holding herein, I accordingly concur.