## CAROLINA CASUALTY INSURANCE COMPANY v CHAMBERS, etc.

### Case No. 89-10983

Thirteenth Judicial Circuit, Hillsborough County

October 3, 1990

### APPEARANCES OF COUNSEL

**Michael D. Siegel, Esquire,** for plaintiff.

**Gerald R. Herms, Esquire,** and **Robert Carbonell, Esquire,** for defendant.

### OPINION OF THE COURT

GUY W. SPICOLA, Circuit Judge.

### *FINAL DECLARATORY JUDGMENT IN FAVOR OF PLAINTIFF*

THIS CAUSE came before the Court for final hearing on September 26, 1990, and Michael D. Siegel, Esq. and Clay Custer, Esq., appeared

on behalf of the Plaintiff Carolina Casualty Insurance Company, and Gerald R. Herms, Esq. and Robert Carbonell, Esq., appeared on behalf of the Defendant Lillian Chambers. The Court, having taken testimony and having considered the law, hereby makes the following judgment in favor of the Plaintiff Carolina Casualty Insurance Company.

## FACTS

Davie Truckers, Inc. is a family business owned by Elaine D. Smith and her husband, Wayne Smith. It is a North Carolina corporation with its principal place of business in Advance, North Carolina. It has trucking operations and/or employees in North Carolina, Georgia, Texas, and Florida. In September, 1987, Davie Truckers purchased a fleet policy of insurance with Carolina Casualty. The policy included $1,000,000 in liability coverage and $1,000,000 in uninsured motorist coverage.

The 1987-1988 policy was obtained by Davie Truckers through its insurance agent Keith Hiller of Mocksville, North Carolina. Because Hiller is a licensed agent of Nationwide, which does not insure trucking operations, Hiller contacted South Atlantic Underwriters, a general agent for Carolina Casualty, about writing the policy through them. South Atlantic is located in Erwin, North Carolina.

In August 1988, Keith Hiller contacted Elaine Smith regarding the renewal of the policy with Carolina Casualty for an additional year. An application was prepared which provided for $1,000,000 in liability coverage but only provided for the minimum limits of uninsured motorist coverage, $25,000/$50,000/$10,000. The $10,000 is for property damage uninsured motorist coverage which exists in North Carolina but not in Florida. Smith's testimony was that she requested the minimum limits on the policy because she was trying to keep the premiums low. The evidence was that there was significant savings by reducing the uninsured motorist coverage. In addition to reducing the limits of uninsured motorist coverage from the previous year's limits of $1,000,000 to $25,000/$50,000/$10,000, David Truckers also (1) decided not to purchase collision coverage and (2) raised their deductible on their liability coverage to $1,000.

On September 9, 1988, Carolina Casualty quoted revised premiums for the contract based on minimum uninsured motorist coverage. Tina Maynard, a licensed agent of South Atlantic Underwriters, subsequently prepared the policy and the pertinent endorsements for delivery to the insured by typing in the appropriate names and amounts. In doing so, Maynard typed in "$25,000/$50,000$10,000" on the declarations page as the amount of uninsured motorist coverage. However, she

158

typed in "$1,000,000" rather than "$25,000'$50,000/$10,000" on the uninsured endorsement. Maynard testified that this was a clerical error and that she correctly noted the amount of coverage on the declarations page.

According to Hiller and Smith, the declarations page correctly provided for only $25,000 in uninsured motorist coverage as it was the understanding of both that there was only $25,000 in uninsured motorist coverage. Neither Hiller nor Smith noticed the two written rejection forms attached to the back of the policy, nor did the notice the $1,000,000 uninsured motorist endorsement contained in the policy.

On October 24, 1988, in Manatee County, Florida, Darrell Chambers was driving a tractor trailer owned by Davie Truckers while in the course and scope of his employment, when he was involved in an accident due to the negligence of an uninsured motorist. Mr. Chambers died on October 27, 1988, as a result of the injuries sustained in that accident. Chambers was one of several employees at the Thonotosassa, Florida location of Davie Truckers, and he reported to work at that location. The truck he was operating at that time was insured under the policy in question.

On November 3, 1988, Elaine Smith signed a North Carolina rejection/selection of uninsured motorist form and a Florida rejection/selection of uninsured motorist form. The North Carolina form purported to select uninsured motorist limits of $25,000, $50,000, and $10,000. The Florida form purported to select $25,000, $50,000, and $10,000 worth of uninsured motorist coverage as well as to select non-stacked coverage.

## ISSUES

A) Whether the law of North Carolina or the law of Florida applies in this dispute?

B) Whether Davie Truckers made a knowing rejection of the $1,000,000 uninsured motorist coverage?

C) Whether Mrs. Chambers can "stack" uninsured motorist coverage?

## DISCUSSION

### A) WHAT LAW APPLIES

In determining whether to apply North Carolina law or Florida law to this dispute, it is important to decide whether the doctrine of *lex loci contractus* is applicable. That doctrine provides that the laws of

the jurisdiction where the contract was executed govern ·interpretation of substantive issues regarding the contract. *Sturiano v Brooks,* 523 So.2d 1126 (Fla.1988). The rule of *lex loci contractus* has been much criticized and, in several jurisdictions, discarded in favor of the most significant relationship test of section 188 of Restatement (Second) of Conflicts of Laws (1971). *Id.* at 1129.

While recognizing the rule's inflexibility, the Florida Supreme Court in *Sturiano* held that the rule of *lex lock contractus* governs the rights and liabilities of the parties in determining the applicable law on an issue of insurance coverage, precluding consideration of the significant relationship between Florida and the parties and/or the transaction. *Id.* In *Sturiano,* the insureds were lifetime residents of New York who purchased automobile insurance in New York six years prior to an accident they had in Florida. The couple moved to Florida each year for the winter months but did not notify the insurance company of this move and the insurance company had no way of knowing that such a move had taken place. In deciding the conflict of laws issue, the *Sturiano* court said:

> "The parties to this contract did not bargain for Florida or any other state's laws to control. We must presume that the parties did bargain for, or at least expected, New York law to apply." *Id.* at 1130.

In the present case, Mrs. Chambers argues that Carolina Casualty did bargain for Florida law to control. She points out that the policy contains endorsements relating to Florida PIP coverage, Florida uninsured motorist coverage, and Florida rejection of uninsured/underinsured motorist coverage and stacking forms. Mrs. Chambers argues that the most significant relationship test, as set out in *Gillen v United Services Automobile Association,* 300 So.2d 3 (Fla. 1974), should guide this court in determining whether Florida or North Carolina law should apply. In *Gillen,* a New Hampshire resident bought an automobile insurance policy in New Hampshire, moved to Florida, and renewed the policy. At the time of the accident, the insurance company defended on the ground that the policy contained "other insurance" provisions and uninsured motorist coverage did not apply.

The Florida Supreme Court in *Gillen* held that Florida law governed a contract where the insured's vehicle was garaged in Florida at the time of the accident with appropriate notice having been given the insurance company, where the insured had taken affirmative steps to establish residence in Florida and where the risk of the policy was centered in Florida with only minimal contact in New Hampshire.

**160**

Moreover, Florida's public policy against "other insurance" provisions required the court to assert Florida's paramount interest in protecting its residents. *Id.* at 7.

*Gillen* can be distinguished from *Sturiano* in that appropriate notice had been given to the insurance company in *Gillen* that the insured vehicle was garaged in Florida; whereas in *Sturiano,* the insurance company had no notice of the insured's move to Florida. In the present case, Carolina Casualty knew that some of the insured vehicles were in Florida and that Davie Truckers had an office in Thonotosassa, Florida at the time the insurance policy was negotiated. Thus, it could be persuasively argued that because of Carolina Casualty's knowledge of these vehicles being in Florida, the most significant relationship test of *Gillen* should be used.

On the other hand, the rationale of *lex lock contractus* as applied in *Sturiano* may be equally applicable in the present case. Despite the attachments of Florida forms to the insurance contract, Carolina Casualty may not have bargained for Florida law to apply. Davie Truckers was procuring insurance for its vehicles in Florida, Georgia, Texas, and North Carolina. Since the insurance policy was to cover vehicles in four states, it is reasonable to assume that the parties to the contract bargained for North Carolina law to control, rather than the law of Florida, Georgia, and/or Texas.

In the final analysis, it is not necessary to determine whether Florida law or North Carolina law controls; under either state's law, Carolina Casualty would prevail.

### B) REJECTION OF UNINSURED MOTORIST COVERAGE

The Court finds that Davie Truckers made an informed and knowing rejection of the $1,000,000 uninsured motorist coverage.

Under North Carolina law, rejections of uninsured motorist coverage must be on a form "promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance." N.C. Gen. Stat. § 20-179,21(b)(4) (1988). However, this written rejection requirement is inapplicable to Carolina Casualty since the North Carolina Rate Bureau has no jurisdiction over fleet vehicle policies. N.C. Gen. Stat. § 58-36-1(1) (1988). According to section 58-40-10(2) of the General Statutes of North Carolina, there must be more than four motor vehicles on the policy to constitute a "fleet" vehicle. Since Davie Truckers had more than four motor vehicles on the policy, it was a fleet motor vehicle and the North Carolina Rate Bureau would have no jurisdiction. Thus, a written rejection is not required under North Carolina law.

**161**

Despite the absence of a written rejection requirement, Carolina Casualty still has the burden of proving rejection. *Lichtenberger v American Motorist Insurance Co.,* 7 N.C. App. 169, 172 S.E.2d 184 (1970). The Court finds that Carolina Casualty has met its burden of proving rejection.

Mrs. Chambers argues that under Florida law, a written rejection of uninsured motorist coverage is required. She further argues that the rejection forms signed after her husband's accident are not valid. Florida Statutes § 627.727(1) (1987) states:

> "The rejection or selection of lower limits shall be made on a form approved by the Insurance Commissioner . . . If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits." If this conclusive presumption does not exist, it does not mean that an insured automatically receives uninsured motorist coverage. The insured may waive the right to a written rejection. *Quirk v Anthony,* 563 So.2d 710 (Fla. 2d DCA 1990).

In *Quirk,* the court stated:

> "[o]nce a class II insured establishes that no written rejection exists, the burden of proof shifts to the insurance carrier. The carrier must then prove that the named insured waived the right to a written rejection by otherwise making a knowing rejection." Thus, if Carolina Casualty proves that Davie Truckers made an informed and knowing rejection of uninsured motorist coverage, then the absence of a written rejection is immaterial. Based on the testimony received, this court finds that Davie Truckers did make an informed and knowing rejection of $1,000,000 uninsured motorist coverage.

Since the court finds that Davie Truckers made an informed and knowing rejection of uninsured motorist coverage, the result under both North Carolina law and Florida law is the same.

### C) STACKING OF UNINSURED MOTORIST COVERAGE

Under North Carolina law, stacking is not allowed for fleet vehicle policies. In *Sutton v Aetna Casualty & Surety CO.,* 325 N.C. 159, 382 S.E.2d 759 (1989), the North Carolina Supreme Court ruled that § 20-279.21(b)(4) (1985) of the General Statutes of North Carolina allows both interpolicy and intrapolicy stacking of uninsured motorist coverage. However, that statute states that "this paragraph [allowing stacking] shall apply only to nonfleet private passenger motor vehicle insurance." Moreover, the *Sutton* court reasoned that if stacking within a fleet policy were allowed, it would give the insured an amount of

uninsured motorist coverage far in excess of what either party bargained for. *Id.* 382 S.E.2d at 764.

Under Florida law, the result would be the same. In *Travelers Insurance Company v Pac,* 337 So.2d 397 (Fla. 2d DCA 1976), the Second District Court of Appeal held that stacking of uninsured motorist coverage was not available to a person who achieves his status as an insured by driving his employer's vehicle. *Pac* relied on the distinction between two classes of beneficiaries. Class one members consist of the named insured and any family members who reside in the named insured's household. Class two members consist of any other persons who are eligible for coverage by virtue of being injured while occupying the insured vehicle. The *Pac* court ruled that stacking is only available for class one insureds since it is presumed that when the named insured purchases uninsured motorist coverage on more than one vehicle, he intends to buy extra protection for himself and his family. This rationale is not applicable to a class two insured since he has no relationship with any other insured vehicle. The *Pac* court reasoned that an employee is not allowed to stack where the named insured is a large commercial venture because that would give the insurance company a potential liability running into millions of dollars in return for a minimal premium. *Id.* at 399.

Mrs. Chambers argues that she be permitted to stack coverages based on *Hurtado v Florida Farm Bureau Casualty Company,* 557 So.2d 612 (3rd DCA 1990), which held that an employee was entitled to stack coverages where his employer purchased uninsured motorist insurance with full knowledge that the employee would use the vehicle full time for his and his family's regular use. The Third District ruled that Mr. Hurtado was not properly categorized as a class one or class two insured because he was the "regular, full time user of the vehicle his employer furnished him for his, and his family's regular uninterrupted use while he remained" employed there. The *Hurtado* court ruled that Mr. Hurtado was more than a mere employee using his employer's vehicle. The court held that:

> "Miranda [Hurtado's employer] purchased uninsured motorist insurance with the full knowledge that Hurtado would use the vehicle full time, and, just as a named insured purchases coverage to benefit family members, Miranda purchased insurance to benefit Hurtado" *Id.* at 614. The facts in *Hurtado* were particular to that case. Mr. Hurtado was considered a member of Miranda's "family." Therefore, even though he could not be legally classified as a class one insured, Mr. Hurtado was treated as though he were a class one insured. In the present case, there is insufficient proof to suggest that Mr.

Chambers was considered a member of Davie Truckers' "family," so as to permit him to stack the coverages under Davie Truckers' fleet policy.

Mrs. Chambers also argues that the amended Florida Statute, § 627.727(9) (1987), removed any distinctions between class one and class two insureds as far as stacking is concerned. However, language in *Hurtado* suggests otherwise:

"Initially, Florida courts permitted the stacking of insurance coverage . . . *Then, as now,* the beneficiaries of uninsured motorist coverage were divided into two distinct classes." (emphasis added). *Id.* at 613. Thus, even *Hurtado* recognizes the distinctions between class one and class two insured. Although the *Hurtado* court ruled that Mr. Hurtado was entitled to stack his employer's coverage, this court is not bound by the Third District's ruling. This court is bound by the Second District's ruling in *Travelers Insurance Company v Pac.** Mr. Chambers, as an employee of Davie Truckers, would be classified as a class two insured. Since *Pac* is still binding, the result in the present case is that Mrs. Chambers is not entitled to stack the coverages of Davie Truckers.

## CONCLUSION

Based on the preceding discussion of law and the evidence presented at final hearing, the court declares that the uninsured motorist policy covering Davie Truckers, Inc., is limited to $25,000.

DONE AND ORDERED in Tampa, Hillsborough County, Florida this 3rd day of October, 1990.

---

* The Florida Supreme Court has accepted review of *Hurtado* under their discretionary conflict jurisdiction.