In re The CELOTEX CORPORATION, et al., Debtors.

The CELOTEX CORPORATION, et al., Plaintiffs,

v.

AIU INSURANCE COMPANY, et al., Defendants.

Bankruptcy Nos. 90–10016–8B1, 90–10017–8B1.
Adv. No. 91–40.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 17, 1996.

Jeffrey W. Warren, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, FL, for debtors.

Charles P. Schropp, William R. Daniel, Schropp, Buell & Elligett, P.A., Tampa, FL, Deborah A. Swindells, Karen L. Bush, Nicholas J. Zoogman, Anderson, Kill, Olick & Oshinsky, Washington, DC, Stephen A. Madva, Montgomery McCracken Walker & Rhoads, Philadelphia, PA, Bruce Bishop, Willcox & Savage, Norfolk, VA, George N. Wood, Vice President and General Counsel, The Celotex Corporation, Tampa, FL, for plaintiffs.

Sara Kistler, Assistant United States Trustee, Tampa, FL.

John W. Kozyak, Kozyak Tropin Throckmorton & Humphreys, P.A., Miami, FL, for Asbestos Property Damage Claimants Committee.

Charles M. Tatelbaum, Johnson, Blakely, Pope, Boker, Ruppel & Burns, P.A., Clearwater, FL, for Unsecured Trade Creditors Committee.

William Knight Zewadski, Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, Tampa, FL, for Unofficial Asbestos Health Claim Co–Defendants Committee.

H.C. Goplerud, Honigman Miller Schwartz and Cohn, Tampa, FL, Sheldon S. Toll, Honigman Miller Schwartz & Cohn, Detroit, MI, for Asbestos Health Claimants Committee.

Daniel C. Sauls, John Flyger, Steptoe & Johnson Company, Washington, DC, for Highlands Insurance Co., Old Republic Insurance Company.

Robert J. Bates, Jr., Maryann C. Hayes, Stanley V. Figura, Bates Meckler Bugler & Tilson, Chicago, IL, for Eric Reinsurance Company.

Deborah M. Paris, Paris & Associates, Tampa, FL, for Certain Underwriters at Lloyd's of London (Plaisted).

John A. Yanchunis, Blasingame Forizs & Smiljanich, St. Petersburg, FL, for Transportation Insurance Company, Continental Casualty Company, Columbia Casualty Company, Eric Reinsurance Company and Zurich American Insurance Company.

David C. McLauchlan, Andrew Kochanowksi, Lord Bissell & Brook, Chicago, IL, for Certain Underwriters at Lloyd's of London.

Thomas B. Keegan, Robins, Kaplan, Miller & Ciresi, Chicago, IL, for Employers Mutual Casualty Company.

William Clearly, Mendes & Mount, New York City, for Barrett and London Market Companies.

Gregory J. Willis, Bart Billbrough, Walton Lantaff Schroeder & Carson, Miami, FL, for Florida Insurance Guaranty Association, Inc.

W. Gray Dunlap, Jr., Tampa, FL, for Hartford, First State & Twin City Insurance Companies.

Rolph Gilbertson, Zeele & Larson, Minneapolis, MN, for Employers Insurance of WAUSAU.

Margaret Jones, Grippo & Eldon, Chicago, IL, for American Insurance Company and National Surety Corporation.

Thomas B. Mimms, Jr., MacFarlane Ferguson, Tampa, FL, for American Home Assurance Company, AIU Insurance Company, Highlands Insurance Company, Old Republic Insurance Company, Granite State Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA., Employers Mutual Casualty Company, American Insurance Company, National Surety Company, St. Paul Surplus Lines Insurance Company.

Christine A. Nykiel, Jackson & Cambell, Washington, DC, for American Home Assurance Company, AIU Insurance Company, Granite State Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA.

Elizabeth G. Repaal, Harris Barrett, Mann & Dew, Tampa, FL, for Northbrook, as successor in interest to Allstate Insurance Company.

Mary A. Lau, Lau Lane Pieper Conley & McCreadie, P.A., Tampa, FL, for Employers Insurance Company of WAUSAU.

Elizabeth B. Sandza, Cynthia T. Andreason, Leboeuf Lamb Greene & Macrea, Washington, DC, for Hudson Insurance Company and Gibraltar Casualty Company.

## ORDER ON MOTION FOR SUMMARY JUDGMENT AS TO CHOICE OF LAW

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

### I. INTRODUCTION

THIS CAUSE came on for consideration upon Cross Motions for Summary Judgment. This Court has considered all arguments and evidence, including the entire record for this case, consistent with a ruling on a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) (holding the standard of proof in summary judgment rulings is the same as it would be at trial); *Celotex v. Catrett,* 477 U.S. 317, 323–35, 106 S.Ct. 2548, 2552–59, 91 L.Ed.2d 265 (1986) (discussing the appropriate burdens of proof and types of evidence to use in summary judgment decisions); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986) (detailing the elements of summary judgment analysis). Finding no genu-

ine issues of material fact remain, this Court grants the Debtor/Plaintiff's Motion for Summary Judgment and rules Illinois law applies under a lex loci contractus analysis.

### II. DISCUSSION

These Motions for Summary Judgment on the choice of law address an issue fundamental to this case. The issue was first addressed in this Court's Order, entered November 24, 1992, ruling the law of Florida applies to determine the Choice of Law in this case, and further, the test in Florida is a lex loci contractus analysis.[1] The issue addressed at this time is how to apply the lex loci contractus analysis to the facts of this case.[2]

#### A. Lex Loci Contractus in Florida

Florida's application of lex loci contractus analysis has not developed in any easily discernable, straight line fashion. The effect of public policy considerations is often the haven for the peculiar outcomes of particular cases.[3] However, the Court finds two deci-

---

1. The Court notes at the time of its 1992 ruling, the lex loci contractus analysis drew different comments on the philosophy of the Florida Supreme Court when examined in different contexts. The United States Court of Appeals for the Eleventh Circuit discusses Florida case law regarding choice of law issues at length in *Shapiro v. Associated International Insurance Co.,* 899 F.2d 1116, 1118–21 (11th Cir.1990). The Court further notes the 1992 ruling was not made with a view toward the policy associated with making a complete ruling on choice of law—i.e., taking into account the full dramatic effect of choosing a particular state.

   The Court's 1992 Order considered, in addition to applicable case law, sections 188 and 193 of the Restatement of Conflicts of Law and the Restatement of Conflicts of Law, Second. *See Shapiro,* 899 F.2d at 1119–21 (containing the Eleventh Circuit's view of whether section 193 would be applied in Florida law); *Sturiano v. Brooks,* 523 So.2d 1126, 1129–30 (Fla.1988); *Gillen v. United Services Automobile Ass'n,* 300 So.2d 3, 6–7 (Fla.1974); *Jemco, Inc. v. United Parcel Service, Inc.,* 400 So.2d 499, 501 n. 5 (3rd Dist.Ct.App.1981) (discussing section 188 under Florida law).

2. The Court notes there are individual settlements among certain parties in this case choosing which law applies to particular insurance contracts. The main debate at hand has come down to a choice between Florida and Illinois

law, and it is this choice the Court makes in the case at bar.

3. Cases involving divorce and antenuptial agreements are particularly susceptible to analysis heavily laced with public policy considerations peculiar to the sensitivities of family law. For this reason, these cases will not be considered as supporting the application of lex loci contractus to the instant facts.

   As an example of the role of public policy considerations in these types of cases, the Court cites *In re Estate of Santos,* 648 So.2d 277 (Fla. 4th Dist.Ct.App.1995). In *Santos,* the Fourth District Court of Appeal held an antenuptial agreement, executed in Puerto Rico in 1966 by a couple who eventually moved to Florida in 1981, was subject to Florida law with regard to the couple's Florida home. *Id.* at 278–79, 282. The *Santos* court reasoned the strength of public policy considerations protecting Florida residents' constitutional rights to homestead protection, *see* Fla. Const. Art. X, section 4, were sufficient to require application of Florida law to decisions regarding the couples' Florida home. *Id.* at 282.

   Under a straight lex loci contractus analysis, there would be no reason to consider applying Florida law to this Puerto Rican agreement. *See Sturiano v. Brooks,* 523 So.2d 1126, 1129–30 (Fla.1988). There is no suggestion the parties had any connection to Florida at the time of executing the antenuptial agreement in Puerto

sions are key to applying lex loci contractus under Florida law: *Shapiro v. Associated International Insurance Co.*, 899 F.2d 1116 (11th Cir.1990) and *Jemco, Inc. v. United Parcel Service, Inc.*, 400 So.2d 499 (3rd Dist. Ct.App.1981).

■ Both of these cases stand for the proposition the test under a Florida lex loci contractus analysis is determining "'the place where the last act necessary to complete the contract was done.'" *Shapiro*, 899 F.2d at 1119 (quoting *Jemco*, 400 So.2d at 500); *see Fioretti v. Massachusetts General Life Insurance Co.*, 53 F.3d 1228, 1235 (11th Cir.1995); *Sturiano v. Brooks*, 523 So.2d 1126, 1129–30 (Fla.1988). This is "the traditional choice of law rule in Florida." *Id.*[4] The Court applies the last act test to decide where the contract was completed and, thus, which state's law would apply.

### B. The Facts

There are numerous facts in this case relevant to determining where the insurance contracts were completed. All of the parties, even prior to litigation, were very involved with each other. The Debtor (The Celotex Corporation), the insurance broker (Rollins Burdick Hunter (RBH)), the wholesale brokers, the associated agents, and all of the

---

Rico. The *Santos* Court's departure from the straight lex loci contractus analysis illustrates the "shifting sands" underlying choice of law in Florida, and illustrates this Court's concerns about following divorce cases as precedent.

This Court also notes the District Court of Appeal in the *Santos* case framed the following certified question to the Florida Supreme Court: DOES THE DOCTRINE OF *LEX LOCI CONTRACTUS* GOVERN THE RIGHTS AND LIABILITIES OF THE PARTIES IN DETERMINING THE APPLICABLE LAW ON AN ISSUE OF THE VALIDITY OF AN ANTENUPTIAL CONTRACT PRECLUDING CONSIDERATION OF THE SIGNIFICANT RELATIONSHIPS OF THE PARTIES TO FLORIDA OR THE SUBJECT MATTER OF THE CONTRACT? *Santos*, 648 So.2d at 283. The question was never taken up to the Florida Supreme Court and remains unanswered as of the date of this opinion.

4. The United States Court of Appeals for the Eleventh Circuit carves out another exception to applying the lex loci contractus analysis by declining to extend the rule to the *Shapiro* facts. *Shapiro*, 899 F.2d at 1119–20. The Eleventh Circuit's holding is predicated on the premise the Florida Supreme Court would not apply California law to interpret an insurance policy when the insured premises are in Florida and the cause of action in tort requiring insurance reimbursement arose in Florida. *See id.* The *Shapiro* court uses section 193 of Restatement of Conflicts of Law 2d, applying a significant relationship test to the *Shapiro* facts. *Id.* The section 193 approach is used by the Florida Supreme Court in several areas of the law, *id.* at 1120, and the *Shapiro* Court determines the significant relationship test is most appropriate on its facts. *See id.* at 1120–21. This ruling, however, does not alter the rule governing choice of law for contracts in Florida, which the *Shapiro* Court expressly acknowledges is lex loci contractus. *Id.* at 1119.

The *Shapiro* Court briefly discusses another Florida Supreme Court case, *Gillen v. United*

Services Automobile Ass'n, 300 So.2d 3 (Fla. 1974). *Shapiro*, 899 F.2d at 1120. The *Gillen* case is important because the Florida Supreme Court applied Florida law to a contract for automobile insurance originally made in New Hampshire. *Gillen*, 300 So.2d at 4. The *Gillen* Court reasoned the fact that the insured party lives and drives in the state of Florida gives the state a sufficient relationship to the contract to apply Florida law. *See Shapiro*, 899 F.2d at 1120–21; *Gillen*, 300 So.2d at 6–7. However, the *Gillen* Court expressly chose not to adopt or reject section 193 of the Restatement (Second) of Conflicts of Law, stating "[t]his Court has never adopted this test, although consideration has been given to the subject." *Gillen*, 300 So.2d at 6; *see Shapiro*, 899 F.2d at 1120. The *Gillen* court continued, "[s]uffice it to say, Florida has a significant relationship to the insurance contract at issue for the following reasons ...," the vehicles are in Florida, the Gillens took steps to attain residency in Florida, and the risk is in Florida. *Gillen*, 300 So.2d at 6.

The *Gillen* decision was not adopted, or even addressed, in the Florida Supreme Court's later opinion in *Sturiano v. Brooks*, 523 So.2d 1126 (Fla.1988). The *Sturiano* opinion expressly adopted and applied lex loci contractus to facts similar to those in *Gillen*. *See id.* at 1129–30. Notwithstanding the existence of the *Gillen* opinion, the latest word on choice of law and contract interpretation from the Florida Supreme Court is lex loci contractus applies. *See id.*

The *Shapiro* Court states further there is a strong likelihood a Florida court would find a public policy interest exists sufficient to require application of Florida law to the *Shapiro* facts. *Id.* at 1121. This likelihood arises because of Florida's strong interest in regulating the insurance industry with regard to risks permanently located in Florida—which was the case under the *Shapiro* facts. *Id.* Under the facts of the instant case, the risks involved are not primarily in any one state. A location of the risk standard in the instant case would be almost unworkable as the risks were nationwide. *See infra* section H.

Defendants (Insurance Companies) had strong interaction with each other from year to year. The relationships were not simple transactions where an individual contacts a broker, the broker finds an agent, and the agent issues a policy to the individual. The activity here required multiple phases of interaction over a long period of time and a broad spectrum of insurance coverage.

The communication required to maintain these relationships included discussions and debates, exchanges of documents, mutual interest—every type of activity associated with purchasing insurance in the open market place. The relationships existed prebankruptcy and prelitigation. Thus, there was a long life to these relationships within a particular business context. Evidence presented, particularly in the bodily injury portion of this trial, supports the existence of this life. The evidence included volumes of yearly applications to renew insurance coverage, submissions attached to those applications, form 10–K's, annual reports, discussions regarding premiums and coverage—all of these communications address the same types of issues in the context of the parties' relationships.

The Debtor used the same broker, RBH, for the most part. All of the Defendants' used similar type brokers. All of this activity occurred within the Illinois insurance market, where all of the participants were well known to each other. Regardless of whether brokers or agents were used by Defendants outside the Illinois market, they all interacted with RBH which is situated in Illinois. The relationships all existed in the same market—the Illinois insurance market. In the legal context, everyone dealt with RBH. The negotiating, the contracting, the offers, the acceptances, the binders, the claims, and all other related transactions shared this predicate.

The facts associated with Florida are far less numerous. Primarily, Florida domiciled the Debtor. While this Court acknowledges the principal place of business of a major party is a relevant fact, it is not sufficient to conclude the choice of law. Admittedly, some decisions were made by Celotex in Florida. Decisions, however, were made on occasion in other states as well. These decisions, possibly made in New York, London, or Florida, are not sufficient to shift the balance away from the Illinois market—a market in which all of parties functioned.

### C. Applying Lex Loci Contractus to the Facts

Applying the last act test under the Florida lex loci contractus analysis, this Court finds the ultimate act binding all the parties together in their individual contracts took place in Illinois through the various agents of all the parties. The Court takes this position ultimately based on the importance of the binding of insurance coverage issued in Illinois as the culmination of the business relationship between the parties. In the context of insurance law, the particular companies and insureds are bound by the acts of their agents. Without elaborating on the details of what each agent can or cannot do, the law is clear that delivery of the binders of insurance to the particular agents in Illinois is sufficient to bind all the parties and, thus, to be the final act required to secure coverage under the contracts.[5]

---

5. The Defendants refer the Court to *Frank v. Travelers Indemnity Co.,* 310 So.2d 418 (Fla.3d Dist.Ct.App.1975), for the proposition a binder is not an insurance policy. The *Frank* case does state "[a] binder is not a policy of insurance." *Id.* at 419. The *Frank* court was confronted with the following facts:

> Gilbert Frank wished to procure insurance for his son's car. He contacted a Mr. Biggs who was an employee of the Hunt Insurance Agency. The Hunt Agency was authorized to issue oral binders on behalf of Travelers to applicants for policies of insurance with Travelers. Biggs issued an oral binder of insurance to Frank. Thereafter, Biggs attempted to place

the insurance with Travelers and Travelers orally refused.

*Id.* The issue confronting the *Frank* Court was whether Traveler's could be held liable on the contract where Mr. Biggs was authorized only to issue oral binders, not a policy of insurance. *Id.* at 20. The *Frank* Court found there was no coverage for the accident, which occurred after the notice of rejection was given by Travelers, even though the sixty day binder had not expired. *Id.* The rejection of coverage terminated the binder. *Id.*

This Court finds the *Frank* case distinguishable from the instant case. Whether or not the Defendants could be held liable for coverage merely on the issuance of binders, where subsequent poli-

### D. Other "Last Acts"

The parties raised arguments that certain acts should be considered last acts under Florida law. These acts include delivery, countersignature, payment of taxes, changes to contracts, and the location of the broker. The Court will address individually the reasons for rejecting these arguments.

#### 1. Delivery

■ First, the Court addresses delivery of the policy as a last act to complete the contract. There are several cases in Florida courts allegedly supporting the idea of delivery as the last act needed for coverage. *See Bloch v. Berkshire Insurance Co.*, 585 So.2d 1137, 1137 (Fla. 3rd Dist.Ct.App.1991); *Bennett v. Granite State Insurance Co.*, 526 So.2d 187, 188 (Fla. 3rd Dist.Ct.App.1988); *New Jersey Manufacturers Insurance Co. v. Robertazzi*, 473 So.2d 235, 236 (Fla. 4th Dist. Ct.App.1985).[6] Upon review, the difficulty with these cases is none of them hold the act of delivery is the last act necessary to complete a contract. Admittedly, the state law applied was the state where the contract was delivered. However, the central dispute in these cases did not concern a conflict over the last act necessary to complete a contract.[7] The act of delivery, while it may be a shorthand form of making a last act, is not sufficiently relevant to establish the last act necessary to complete the contract under this Court's understanding of the *Shapiro, Jemco,* and *Sturiano* opinions, nor is delivery sufficient as a last act in this Court's general understanding of lex locus contractus analysis.

#### 2. Countersignature

■ A last act test for countersignature is similarly artificial. Notwithstanding the insurance regulatory significance of countersignature,[8] this Court does not find the efficacy of the policy solely contingent on the presence or absence of a countersignature.[9] Impediments may arise in connection with the

cies of insurance were never issued, is not the issue before this Court.

Recognition of the binder as the last act necessary to complete a contract for coverage is consistent with the concept of binders in insurance law. *See* 12A **John A. Appleman & Jean Appleman**, division 8, pt. 50, ch. 263A, sec. 7228 **Insurance Law and Practice** (1981) ("A contract of insurance is ordinarily complete and closed when the binder is signed and delivered.") "Unless inhibited by statute, a memorandum of insurance in the nature of a binder or binding slip constitutes a valid contract." *Id.* at sec. 7227. "The issuance of a binder evidences a complete, temporary, or preliminary contract of insurance effective from that time until issuance of the formal policy or until rejection of the risk, irrespective of the type of insurance concerned." *Id.* (citations omitted).

6. The case of *Sun Insurance Office Limited v. Clay*, 265 F.2d 522, 524 (5th Cir.1959), *cert. granted*, 361 U.S. 874, 80 S.Ct. 141, 4 L.Ed.2d 113 (1959) *and judgment vacated by*, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960) was cited to this Court as a case applying Florida law. However, as this judgment was vacated, the Court cannot rely on the *Sun Insurance* reasoning.

7. *Bloch*, 585 So.2d at 1137 ("As to the choice of law issue, we agree with the trial court that this insurance contract, which was delivered to Bloch in New York where he then resided, was regulated by New York, rather than Florida, law.") (construing the ability of an insured to force reinstatement of an individual life insurance poli-

cy); *Bennett*, 526 So.2d at 188 ("It is uncontroverted the policy of automobile insurance was issued and delivered by Defendant in Georgia to Plaintiff, a Georgia resident whose principal place of business is located in Georgia. The [insured] vehicles ... were principally garaged in Georgia and operated by persons licensed in the State of Georgia.") (quoting the trial court and upholding the trial court's decision to apply Georgia law under Florida's newly confirmed test using lex loci contractus); *New Jersey Manufacturers*, 473 So.2d at 236 ("The issue here is coverage and liability, as concerns a Florida automobile accident, under the terms of the Family Automobile Policy issued by NJI. The policy was issued in New Jersey to a New Jersey resident and the premiums were paid in New Jersey. NJI is a New Jersey corporation not licensed to do business in Florida.") (reversing trial court's application of Florida law to insurance contract under Florida precedent applying the "most significant relationship" test to personal injury tort claims).

8. *See, e.g.*, Fla.Stat. ch. 624.425 (1995) (requiring resident agent and countersignature).

9. Defendants suggest the Florida Third District Court of Appeal opinion in *Jemco, Inc. v. United Parcel Service, Inc.*, 400 So.2d 499 (3rd Dist.Ct. App.1981) supports the argument for countersignature as the last act necessary to complete the contract. "Other Florida courts have held that the state where the last signature is affixed to the contract is controlling." Defs. Hartford Accident and Indemnity Company, First State Insurance

absence of a countersignature, but these are not sufficient to consider countersignature the last act needed to complete a contract of insurance for the purposes of lex loci contractus analysis.

### 3. Payment of Taxes

■ The payment of taxes in a particular state is a significant act. However, nothing is offered here to support the argument mere payment of taxes in any given state by the Debtor, or some of the Defendants, in connection with the insurance policies is anything more than adherence to regulatory or tax processes. These processes have not been shown to have any bearing on the last act necessary to make a contract of insurance binding.

### 4. Changes to Contracts

■ There has been some discussion of post petition changes to contracts, suggesting

Company, and Twin City Fire Insurance Company's Mem. in Supp. of Their Mot. for Partial Summ. J. that the Substantive Law of Florida Governs the Interpretation of Their Policies at p. 15; *see also*, National Surety's Mem. in Opp'n. to Debtors' Mot. for Partial Summ. J. that, Under the Court's Lex Loci Contractus Ruling of November 24, 1992, Illinois Law Should be Applied to the Post–1977 Policies at p. 8; Florida Insurance Guaranty Association, Inc.'s Mem. in Opp'n. to Debtor's Mot. for Partial Summ. J. Regarding Choice of Law at p. 11.

The *Jemco* Court said the following about the facts surrounding the creation of a contract in its case:

> United Parcel Service, Inc. (UPS), an Ohio corporation with its principal place of business in Connecticut, contracted with Jemco, Inc., a Texas corporation, for the purpose of having Jemco install a conveyor system in a building UPS was having built in Miami.
>
> .    .    .    .    .
>
> The contract negotiations between Jemco and UPS took place in New York and Texas. After agreement was reached, a Jemco representative signed the contract in Texas and forwarded it to UPS at its headquarters in Connecticut, where it was executed by UPS. *Jemco does not dispute that the last act necessary to complete the contract, the signing by UPS, was done in Connecticut.*

*Jemco*, 400 So.2d at 500 (citations omitted) (emphasis added).

> These facts are clearly distinguishable from the instant case. The parties in this case do not agree on what constitutes the last act necessary to complete the contract. The *Jemco* Court was not required to rule on a dispute

the state where the changes are made should be the state of contract under lex loci contractus analysis. The Court rejects this argument. Changes to existing contracts raise issues as to the extent of coverage, but have no bearing on the last act necessary to make coverage binding.

### 5. Payment of Premiums

■ The payment of premiums in a particular state is also not the last act necessary to complete the insurance contract.[10] Payment of premiums ensues from an insurance contract, but the location of payment does not have any bearing on the enforceability of the contract—the location is incidental. If payment of premiums is the last act necessary to complete the contract, one could argue a new contract exists each time a new premium is paid. Further, payment of new premiums in

> over what constitutes a last act—the parties agreed on the last act of the single contract in dispute. This Court rejects the suggestion the *Jemco* facts and holding are precedent for the argument that countersignature must be the last act in the instant case. The *Jemco* Court did not hold the last act test requires application of the law of the state where the last signature is affixed. The *Jemco* Court did not rule on the issue of countersignature as it was not in dispute.

10. Defendants present one case to support the payment of premiums as "highly relevant to the lex loci choice of law inquiry." Defs. Hartford Accident and Indemnity Company, First State Insurance Company, and Twin City Fire Insurance Company's Mem. in Supp. of Their Mot. for Partial Summ. J. that the Substantive Law of Florida Governs the Interpretation of Their Policies at p. 18 (citing only to *Sun Insurance Office Limited v. Clay*, 265 F.2d 522, 524 (5th Cir.1959), *cert. granted*, 361 U.S. 874, 80 S.Ct. 141, 4 L.Ed.2d 113 (1959) *and judgment vacated by*, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960)). The *Sun Insurance* judgment was vacated, therefore this Court cannot rely on the reasoning in that case.

However, this Court notes for the record the *Sun Insurance* court stated, "This insurance policy was issued and delivered in Illinois to a citizen of that state, and it was paid for by him while he was present and residing in that state." *Id.* at 524. This Court sees no greater emphasis on the payment of premiums than on the other acts the *Sun Insurance* Court discusses. Nor does this Court find any support for the suggestion the *Sun Insurance* Court found the payment of premiums

different states on different policies would change the lex loci contractus any time payment is made.

### 6. Location of the Broker

■ Finally, the Court rejects the location of the broker as a basis for determining lex loci contractus. The Court's ruling is not predicated on the mere presence of RBH, or any of the Defendants' agents, in Chicago or in the state of Illinois. The actions of the parties—the acts associated with contracting for insurance—are the predicate for this Court's ruling. Those acts are what this court finds are the last necessary acts to bind the parties to contracts of insurance within the context of the facts.

### E. Public Policy and Florida Law

■ As discussed above, the Florida Courts often use public policy concerns to alter application of a straight lex loci contractus analysis.[11] However, there is no public policy concern specifically relating to Florida here.[12] The risks involved are by no means limited to Florida—they are nationwide.[13] The facts of this case do not fall within previous public policy exceptions to applying a straight lex loci contractus analysis, nor do they support a new public policy exception requiring the application of Florida law. This case simply concerns a large number of contracts for insurance over a number of years involving many aspects of the Debtor's business. Where the parties communicated to make decisions about coverage is significant to establishing the last act needed to establish a contract under Florida lex loci contractus analysis.

highly relevant to a last act test under the Florida lex loci contractus analysis.

11. See supra note 3 and accompanying text.

12. Cf., e.g., Gillen v. United Services Automobile Ass'n, 300 So.2d 3, 7 (Fla.1974) ("Here, the substantial interest of Florida in protecting its citizens from the use of "other insurance" clauses rises to a level above New Hampshire's interest in permitting them.").

13. See, e.g., Aetna Casualty and Surety Co. v. Dow Chemical Co., 883 F.Supp. 1101, 1104–05 (E.D.Mich.1995) (discussing an insured with multiple insurers and multiple claim sites in the

### F. Restatement of the Law (Second) of Conflict of Laws

■ The Restatement of the Law (Second) of Conflict of Laws adopts a different view for choosing the law for contract issues—the "most significant relationship" test. Restatement (Second) of Conflict of Laws sec. 188 (1971); see also Sturiano, 523 So.2d at 1129 (discussing section 188); id. at 1130–31 (Grimes, J. concurring) (favoring section 188 over application of lex locus contractus).[14] The section 188 test is a laundry list of contacts to examine when determining choice of law for a contract. The list includes, "the place of contracting," . . . "place of negotiation," . . . "place of performance," . . . "location of the subject matter of the contract, and" . . . "the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws sec. 188 (1971)

The Court finds the elements of the section 188 test would also lead to Illinois law. The parties contracted in Illinois, negotiated in Illinois, and the place of performance—assuming the place of performance is where the last act needed to bind the parties took place—was Illinois. The subject matter of the contracts are risks of the Debtor, which are located across the country. Finally, the Court rejects the domicile of the Debtor, or the Defendants, as most of them also maintained interests across the country. The Court finds the negotiating, contracting, and ultimately the binding of coverage in Illinois would require a finding Illinois law applies under the section 188 test.

### G. Policy and Complex Litigation

The American Law Institute's Complex Litigation Project suggests some courts rec-

context of choice of law issues involving several states).

14. The facts in the Sturiano case involved lifelong New York residents who purchased auto insurance in New York. Sturiano, 523 So.2d at 1129. The couple wintered in Florida, but did not notify the insurance company of the months they spent outside New York state. Id. The Florida Supreme Court went on to expressly reject the most significant relationship test in favor of lex loci contractus analysis. Id. at 1129–30. The Sturiano ruling is limited to cases involving automobile insurance contracts. Id. at 1129.

ognized a need to find the law of a single state applicable to all of the particular insurance policies involved in a complex litigation. **The American Law Institute, Complex Litigation Project Proposed Final Draft,** *Choice of Law,* sec. 6.03 (April 5, 1993). The policy envisions a vertical unity of coverage interpretation. This Court would still find, within the concepts of lex locus contractus and the most significant relationship test as well, the state is Illinois.

This Court is concerned with selecting a choice of law standard which takes into consideration the need to avoid gaps in coverage, whether vertical (excess coverage), or horizontal (coverage over time). The Court does not suggest an outcome determinative approach to choice of law, i.e. the court chooses state X because state X provides coverage. Rather, the standard should try to avoid a situation where one excess policy is governed by state X law and the next layer by the law of state Y. This concern is consistent with the concerns discussed by the *Complex Litigation Project. See id.*

### H. *Aetna Casualty and Surety Co. v. Dow Chemical Co.*

 The United States District Court for the Eastern District of Michigan in *Aetna Casualty and Surety Co. v. Dow Chemical Co.,* 883 F.Supp. 1101, 1104–05 (E.D.Mich. 1995) provides a well reasoned opinion discussing the difficulties arising in choice of law questions. The *Aetna* case involves multiple insurers and environmental claims spanning 350 locations—facts and issues similar to the case at bar. *See id.* at 1103–04.[15] The *Aetna* Court rejected the location of the risk as a standard for choosing law, *id.* at 1107–08, as does this Court. As a standard, location of the risk simply makes a lottery of the choice of law question. Similarly, this Court finds the principal place of business unacceptable as a standard when there is a complicated corporate history involving numerous parties operating nationwide.

---

**15.** This Court notes the District Court in *Aetna* applied the Restatement (Second) of Conflict of Laws, section 188 most significant relationship test under Michigan law. *Aetna,* 883 F.Supp. at 1105. While this is a different analysis than is

### III. CONCLUSION

The Court finds no genuine issues of material fact remain as to the issue of choice of law. For the reasons stated above, the Court grants Debtors' Motion for Partial Summary Judgment and finds Illinois law governs the post–1977 insurance policies at issue. The Court denies all outstanding Motions for Summary Judgment by Defendants asserting Florida law governs the post–1977 insurance policies.

DONE AND ORDERED.

required in Florida, the *Aetna* Court's discussion of policy concerns and choice of law questions is informative due to the similar facts of the respective cases.