[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 16 2001
THOMAS K. KAHN
CLERK

_____

Nos. 98-5500 & 99-4028

_____

D. C. Docket No. 95-08627-CV-DMM

AUDREY SHAPS,

Plaintiff-Appellant,

versus

PROVIDENT LIFE & ACCIDENT
INSURANCE COMPANY, PROVIDENT
LIFE AND CASUALTY INSURANCE COMPANY,
a foreign corporation,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(March 16, 2001)**

Before EDMONDSON and MARCUS, Circuit Judges, and RESTANI[*], Judge.

MARCUS, Circuit Judge:

_____

[*]Honorable Jane A. Restani, Judge, U.S. Court of International Trade, sitting by designation.

This is an appeal of a jury verdict in favor of Defendant Provident Life and Casualty Insurance Company ("Provident Casualty") in a suit brought by Plaintiff Audrey Shaps alleging two breaches of a disability insurance contract. In a special verdict, the jury determined that Shaps was not continuously disabled within the terms of her Provident Casualty disability policy from September 10, 1990 through October 23, 1994, and thereby rejected her first claim for relief. With respect to her second claim, the jury determined that Shaps was continuously disabled from September 8, 1995 through April 6, 1996, but denied relief because it found that she had failed to comply with certain conditions precedent. On appeal, Shaps argues that the district court committed multiple errors warranting a new trial.

We find all of Shaps' objections to be unpersuasive on this record, save one that cannot be decided at this time. Shaps contends that the district court erred by determining that a rule of Florida law placing the burden of proof on the insurer in this context was inapplicable because that rule is substantive and the substantive law of New York, not Florida, governs this case. Whether the Florida rule is substantive appears to turn in part upon proper characterization of the Florida Supreme Court's decision in Aetna Life Insurance Co. v. Fruchter, 283 So. 2d 36 (Fla. 1973). It is unclear, however, whether the opinion in Fruchter, which

2

discharged a writ of certiorari as improvidently granted, constitutes binding Florida precedent. Moreover, it is unclear to what extent the court's remarks in Fruchter may be read to address the choice-of-law dispute now before us. Accordingly, we respectfully certify to the Florida Supreme Court the following two questions:

1. Is the burden of proof rule recognized in <u>Aetna Life Insurance Co. v. Fruchter</u>, 266 So. 2d 61 (Fla. 3d Dist. Ct. App. 1972), <u>cert. discharged</u>, 283 So. 2d 36 (Fla. 1973), part of the substantive law of Florida, such that it would not be applied in a case where under Florida's doctrine of *lex loci contractus* the substantive law of another state (New York) governs the parties' contract dispute?

2. Would requiring the insured to prove disability in this context violate the public policy of Florida, such that the burden of proof must be placed on the insurer? <u>See</u> <u>Gillen v. United Services Automobile Ass'n</u>, 300 So. 2d 3 (Fla. 1974).

I.

The background to this appeal is as follows. In June 1987, Provident Casualty issued an individual disability insurance policy to Shaps, who at the time resided and worked in New York. The policy defines "Total Disability" in these terms:

Total disability . . . means that due to Injuries or Sickness:

1. you are not able to perform the substantial and material duties    of your Occupation; and
2. you are under the care and attendance of a Physician.

3

The policy defines "Sickness" as "sickness or disease which is first manifested while your policy is in force." The policy defines "Occupation" as "the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled." The policy defines "Physician" as "any legally qualified physician."

The policy also contains the following relevant provisions:

PROOF OF LOSS

If the policy provides for a periodic payment for a continuing loss, you must give us written proof of loss within 90 days after the end of each period for which we are liable. For any other written loss, written proof must be given within 90 days after such loss. . . .

TIME OF PAYMENT OF CLAIMS

After receiving written proof of loss, we will pay monthly all benefits then due for disability. Benefits for any other loss covered by this policy will be paid as soon as we receive proper written proof.

LEGAL ACTIONS

No legal action may be brought to recover on this policy within 60 days after written proof of loss has been given as required by this policy. No such action may be brought after three years from the time written proof of loss is required to be given.

Shaps first submitted a claim for disability benefits to Provident Casualty's New York office on or about July 29, 1989, asserting that the nature of her

4

sickness or injury was "TMJ syndrome" (temporal mandibular joint disorder) and that she last worked in July 1989.  Shaps subsequently submitted additional claim forms to Provident Casualty's New York office, and thereby continued to receive benefits.

On September 7, 1990, Provident Casualty made a final payment to Shaps. Provident Casualty advised Shaps that it had determined that there was no evidence of continuous total disability as defined by her policy, and therefore it was discontinuing payments.

On December 15, 1994, Provident Casualty received from Shaps notice of a new claim for disability benefits, dated December 1, 1994.  Shaps now stated that the nature of her disabling sickness or injury was breast cancer and TMJ syndrome. Shaps' claim form stated that her disabling illness began on October 24, 1994, and that she was disabled as of that date.  Provident Casualty initially paid benefits on this claim.  In May 1995, however, Provident Casualty stopped paying benefits on this claim.  Provident Casualty explained that it stopped paying benefits based on a claim form from Shaps' physician which indicated that Shaps was no longer totally disabled.  After receiving additional information, Provident Casualty sent Shaps a benefit check representing benefits from May through September 1995.  Shaps did

not submit claim forms to Provident Casualty for the period September 8, 1995 to April 6, 1996, and Provident in turn sent no payments for that period.

Shaps filed this lawsuit on September 18, 1995. In her suit, originally filed in the Circuit Court for Palm Beach County, Florida, and subsequently removed to the Southern District of Florida, Shaps alleged breach of insurance contract, naming Provident Life and Accident Insurance Company ("Provident Accident") as the defendant. As amended, Shaps' complaint eventually alleged three separate counts for breach of contract and specific performance against Provident Accident and Provident Casualty, and a count for intentional infliction of emotional distress against both defendants. Provident Accident and Provident Casualty moved for summary judgment on all counts. The district court granted the motion in part, dismissing the count for intentional infliction of emotional distress, and ruling that in the event Shaps prevailed at trial she would have no claim for attorneys' fees pursuant to Florida law. Shaps thereafter amended her complaint to seek disability benefits from October 1990 through the date of trial.

As noted above, the policy at issue contains a clause providing that no action on the policy may be brought more than three years after the time proof of loss was required. Provident Casualty first discontinued payments in 1990, and Shaps brought suit five years later in 1995. Under New York law, which governs the

contract, the limitations period for an insurance policy such as this one begins upon the termination of the disability. Accordingly, the district court ruled that Shaps' breach of contract claim related to the cessation of benefits in September 1990 would be time-barred unless she could prove that she was continuously disabled from October 1990 through October 24, 1994 (when Shaps alleged that a new period of disability, for breast cancer as well as TMJ syndrome, commenced).

The case went to trial in August 1998 on the breach of contract and specific performance counts against Provident Accident and Provident Casualty. At trial, Provident Casualty presented evidence that Shaps was not continuously disabled during the 1990-94 period. In particular, Provident Casualty pointed to evidence that during this time Shaps moved to Florida, arranged a mortgage, sold an apartment in New York, filed tax returns that stated that she was "disabled" in 1990, "unemployed" in 1991, "loan officer" in 1992, and "retired" in 1993 and 1994. Provident Casualty also admitted into evidence Shaps' March 20, 1991 application to Federal Kemper Life Insurance Company for a life insurance policy. The application lists her occupation as a mortgage loan officer who was "between jobs." The application stated that Shaps received disability payments in the past for TMJ as a result of stress, but also stated that she was "doing fine," with respect to TMJ had "[n]o problems. Haven't seen doctor for 2 years," and that all of her

7

tests were "normal." Shaps also affirmed on the forms that she had no "mental or physical impairment or disease." The forms were signed by Shaps, although she testified at trial that she did not intend to make the statements contained in the forms.

For her part, Shaps presented the testimony of two health care providers that she saw during the 1990-94 period. Ethel Green, a social worker who Shaps saw from 1990 to 1992, testified that Shaps exhibited the symptoms of general anxiety disorder, but stated that she could not testify as a medical expert as to whether Shaps was disabled as a result of TMJ syndrome. John Girard, an internist Shaps began seeing in 1992, also testified. He stated that he had no medical knowledge as to whether Shaps was disabled before he saw her in 1992. He also stated that Shaps was disabled from June 1992 through June 1995. Shaps also pursued at trial her separate claim that she was denied benefits between September 8, 1995, and April 6, 1996, in breach of her insurance contract. Among other things, Shaps presented the testimony of her oncologist, Gerald Spunberg, who testified that Shaps was totally disabled as a result of breast cancer. Shaps' psychotherapist, Beth Kreakower, testified that it was her opinion that Shaps was unable to perform her duties as a loan officer from the time Shaps began seeing her in April 1995 until Shaps moved to California in April 1996. At the close of the evidence, the

8

trial court directed verdicts in favor of Provident Accident on the counts remaining against it -- breach of contract and specific performance -- and in favor of Provident Casualty on the count for specific performance. The remaining claims for the jury were the breach of contract allegations against Provident Casualty. The jury completed a special verdict form, finding that Shaps was not continuously disabled within the terms of her Provident disability policy from September 10, 1990 through October 23, 1994. It then determined that Shaps was continuously disabled from September 8, 1995 through April 6, 1996. It also found, however, that Shaps failed to comply with the conditions precedent to her disability policy, so as to bar her claim for benefits during the second time frame. The district court entered final judgment in favor of Provident Accident and Provident Casualty, and awarded costs to the defendants.

## II.

The primary and most complex issue in this appeal is whether the district court erred in determining what law applies to the question of which party bears the burden of proof on a breach of insurance contract claim when the insurer begins to pay total disability benefits to an insured, but later ceases to pay benefits because it believes that the insured is not disabled. This Court reviews choice of

law issues de novo. See Trumpet Vine Instruments, N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996).

Because the basis of the district court's jurisdiction was diversity and suit was filed in Florida, the district court was required to apply Florida's conflict-of-law rules. See, e.g., Maryland Cas. Co. v. Williams, 377 F.2d 389, 392 (5th Cir. 1967) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Under Florida's conflict-of-law rules, the doctrine of *lex loci contractus* directs that, in the absence of a contractual provision specifying governing law, a contract, other than one for performance of services, is governed by law of the state in which the contract is made. See Fioretti v. Massachusetts General Life Ins. Co., 53 F.3d 1228, 1235 (11th Cir. 1995). The contract here was executed in New York. The parties do not dispute that New York law governs interpretation and application of the contract, although they vigorously disagree as to what law governs the burden of proof in this case.

As Shaps sees it, Florida courts would not look to New York law in order to determine the proper allocation of the burden of proof in this situation. Rather, according to Shaps, the burden of proof is a procedural issue for conflict-of-law purposes and hence is governed by Florida law even if interpretation of the

contract is governed by substantive New York law.[1]  Shaps does not dispute that in

most instances Florida law places the burden of proof on the insured in a coverage

dispute.  She maintains, however, that under the particular facts present in this

case, Florida law switches the burden to the insurer -- i.e., Provident -- to prove

that the insured was not disabled, because Provident had paid disability benefits to

Shaps before it determined that she was not disabled and discontinued paying her

benefits.  See Aetna Life Ins. Co. v. Fruchter, 266 So. 2d 61, 63 (Fla. 3d Dist. Ct.

App. 1972), cert. discharged, 283 So. 2d 36 (Fla. 1973).[2]  Provident Casualty does

---

[1]Whether the Florida courts would -- for conflict-of-law purposes -- view burden of proof in this context as a procedural issue, and hence not subject to the *lex loci contractus* rule applicable to substantive contract issues, is analytically distinct from whether the issue is procedural for purposes of a federal court applying state law as opposed to federal law in a diversity case.  See Maryland Cas., 377 F.2d at 393 n.1.  With respect to the latter issue, we have ruled that the burden of proof in diversity cases must be allocated according to state, not federal, law.  See, e.g., Coastal Plains Feeders, Inc. v. Hartford Fire Ins. Co., 545 F.2d 448, 450 n. 5 (5th Cir. 1977).  Accordingly, when we speak of substance versus procedure in this opinion, we are referring only to how Florida law treats the burden of proof for purposes of applying its own choice-of-law rules.

[2]Provident Casualty insists that Fruchter is not actually implicated here because Shaps was not claiming permanent disability; accordingly, says Provident, there is a false conflict between Florida and New York law because both would place the burden of proof on the insured.  According to Provident Casualty, Shaps was not permanently disabled and was instead being paid under provisions of the policy that provided for monthly benefit checks to be paid after monthly submission of proof of loss.  Provident Casualty asserts that in the two cases relied upon in Fruchter, Ewing and Lecks, the insureds were permanently disabled.  Contrary to Provident Casualty's argument, however, it is not clear to us that the Fruchter rule only applies to permanent disabilities and not to cases like Shaps'.   Neither the Ewing court nor the Lecks court specifically limited the rule to permanent disability payments.  Moreover, Fruchter itself involved a case of "total disability" (with no mention of permanent disability) and the court noted that "the language variation in the policy here and in Lecks and Ewing does not in our judgment change the principle applying."   Notably, the policy provision under which Shaps claimed benefits provides:  "We will pay the Monthly Benefit for Total Disability . . . ."  See also

not disagree that the burden of proof is generally a procedural issue subject to Florida law regardless of the operation of *lex loci contractus*. It asserts, however, that the Fruchter's unique burden-of-proof rule is substantive and therefore inapplicable in a case governed by the substantive law of another state. With Fruchter rendered inapplicable, says Provident Casualty, we must fall back on the "normal" Florida rule placing the burden of proof on the insured.

We are not aware of any Florida case law specifically addressing to what extent Florida's burden of proof rules are applicable in a case involving another state's contract laws under the doctrine of *lex loci contractus*. The Florida Supreme Court has held that under *lex loci contractus* the law of the jurisdiction where the contract was executed governs substantive issues regarding the contract, such as the interpretation of its terms. See Lumbermens Mut. Cas. Co. v. August, 530 So. 2d 293, 295 (Fla. 1988). Shaps maintains that the Florida Supreme Court must thereby have intended procedural issues to be governed by Florida law regardless of the effect of *lex loci contractus*. That is the approach taken by the Florida Supreme Court in related contexts. See, e.g., Colhoun v. Greyhound Lines, Inc., 265 So. 2d 18, 20 (Fla. 1972) (Florida law, as law of the forum, applied to

---

Principal Mut. Life Ins. Co. v. Martin, 585 So. 2d 474, 475 (Fla. 3d Dist. Ct. App. 1991) (Fruchter applied in case without mention of permanent disability). There is simply no indication that Fruchter is inapplicable because Shaps did not claim permanent disability.

procedural matters notwithstanding applicability of foreign law to substantive matters under *lex loci delicti*). As a general rule, for conflicts purposes a state will view procedural issues as subject to its own laws. See Maryland Cas., 377 F.2d at 393 n.1 ("As a general rule, states will adhere to the law of a foreign state which is substantive, but will apply its own law on matters of procedure.").

Assuming this proposition to be true, the question then becomes whether Florida does in fact view the Fruchter burden of proof rule as procedural. Shaps argues that in Florida the burden of proof is generally regarded as a procedural issue, and the Fruchter rule is no exception. See Walker & LaBerge, Inc. v. Halligan, 344 So. 2d 239, 243 (Fla. 1977) (noting that "[b]urden of proof requirements are procedural"). Provident Casualty, by contrast, insists that the Fruchter rule switching the burden of proof to the insurer is a principle of substantive law applicable to a particular set of cases. The district court agreed, finding that Florida courts view the Fruchter burden of proof rule as substantive, not procedural, and that therefore the Fruchter rule must give way under *lex loci contractus*.[3] The court explained that the Fruchter rule was "a substantive rule,"

[3]The substantive law of New York does not contain any rule shifting the burden to the insurer in this context. In New York, as ordinarily would be the case in Florida, the burden-of-proof is on the insured. See Klein v. National Life of Vermont, 7 F. Supp. 2d 223, 226 (E.D.N.Y. 1998) (burden of proving total disability within the terms of a disability insurance policy falls upon the insured).

13

and "certainly not a general procedural rule. Florida doesn't follow that rule across the board in terms of its burden of proof. As they point out, it is a special rule for that kind of case that departs from their usual rule and supersedes their standard jury instructions." Accordingly, the district court found that Shaps had the burden of proof on the question of whether she was disabled.

In reaching this conclusion, the district court relied on comments by the Florida Supreme Court in its opinion discharging the writ of certiorari in Fruchter. In that opinion, the Florida Supreme Court considered whether the trial court erred in refusing to give the plaintiff's requested instruction that the defendant insurance company had the burden to show that the alleged total disability had ceased. The court noted that "[t]his Court's standard jury instructions, [placing the burden on the plaintiff] while to be generally followed where applicable, are not intended to change the substantive law applicable to the case." Fruchter, 283 So. 2d at 37 (emphasis added). The court upheld the Third DCA's reversal of the trial court, citing New York Life Insurance Co. v. Lecks, 122 Fla. 127 (1936) and Mutual Life Insurance Co. v. Ewing, 151 Fla. 661 (1942), both of which held that once the insurer has acknowledged a disability by proceeding to make disability payments under the policy, then in a suit to redress the discontinuance of payments and to force the resumption of them, the burden is cast upon the insurer to prove that the

14

disability no longer continues.  The <u>Fruchter</u> court stated:  "[W]e uphold the Third

District's correct application and continued viability <u>as a matter of substantive law</u>

of the holdings in <u>Lecks</u> and <u>Ewing</u> and the district court's reversal and remand of

the cause for a new trial."  283 So. 2d at 38 (emphasis added).

A state court's characterization of an issue as substantive rather than

procedural for choice-of-law purposes is binding on a federal court.  <u>See</u> <u>Maryland</u>

<u>Cas.</u>, 377 F.2d at 393 n.1 (the "characterization adopted by the state courts in this

regard is conclusive upon the federal court") (citing <u>United Air Lines, Inc. v.</u>

<u>Wiener</u>, 335 F.2d 379, 391 (9th Cir. 1964)).  We are unclear, however, whether the

Florida Supreme Court's opinion in <u>Fruchter</u> constitutes such a pronouncement.[4]

First, the opinion simply discharged as improvidently granted a petition for

certiorari.  It is unclear whether such an opinion can constitute binding precedent.

Several lower appellate courts in Florida have cited the Florida Supreme Court's

opinion as precedent.  <u>See, e.g.</u>, <u>Mizrahi v. Provident Life & Accident Ins. Co.</u>, 748

So. 2d 1059, 1060 (Fla. 3d Dist. Ct. App. 1999); <u>Principal Mut.</u>, 585 So. 2d at 475.

On the other hand, Florida courts -- including the Supreme Court itself -- have

suggested that "denial of certiorari by an appellate court cannot be construed as a

_____

[4]The parties have not made us aware of any Florida decision other than the Supreme Court's opinion in <u>Fruchter</u> that addresses whether the burden of proof in this context is substantive or procedural.

15

determination of the issues presented in the petition therefor and cannot be utilized as precedent or authority for or against the propositions urged or defended in such proceedings." Southern Bell Tel. & Tel. Co. v. Bell, 116 So. 2d 617, 619 (Fla. 1959) (citing Collier v. City of Homestead, 81 So. 2d 201 (Fla. 1955)); see also Carol City Utils., Inc. v. Dade County, 183 So. 2d 227, 231 (Fla. 3d Dist. Ct. App. 1966).

Second, it is unclear whether the Florida Supreme Court's description in Fruchter of the burden-of-proof rule in that case as "substantive" was meant to establish that rule as an element of substantive Florida law for conflict-of-laws purposes. Although the opinion seems to mean just that, conflict-of-laws was not an issue in the case. For the foregoing reasons, and given the importance of the issue to proper resolution of this appeal, we think the most prudent course is to certify the question to the Florida Supreme Court.

Shaps makes a related argument that even if the Fruchter burden of proof rule is a substantive component of Florida law that should be rendered inapplicable to this case by operation of *lex loci contractus*, the rule should nevertheless be applied here because Florida public policy supports placing the burden on the insured in this situation. See Gillen v. United Services Auto. Ass'n, 300 So. 2d 3, 6 (Fla. 1974). Because that argument may be inextricably intertwined with

16

resolution of the threshold choice-of-law issue, in an abundance of caution we shall

certify that question as well.[5]

Accordingly, we respectfully certify the following two questions to the

Florida Supreme Court:

1. Is the burden of proof rule recognized in <u>Aetna Life Insurance Co. v. Fruchter</u>, 266 So. 2d 61 (Fla. 3d Dist. Ct. App. 1972), <u>cert. discharged</u>, 283 So. 2d 36 (Fla. 1973), part of the substantive law of Florida, such that it would not be applied in a case where under Florida's doctrine of *lex loci contractus* the substantive law of another state (New York) governs the parties' contract dispute?

2. Would requiring the insured to prove disability in this context violate the public policy of Florida, such that the burden of proof must be placed on the insurer? <u>See</u> <u>Gillen v. United Services Automobile Ass'n</u>, 300 So. 2d 3 (Fla. 1974).

We stress that our formulation of these questions is not meant to limit the

scope of inquiry by the Supreme Court of Florida. As we have explained

---

[5]Shaps argues that the Florida Supreme Court has clearly expressed Florida's public policy that the insured be afforded benefits under her policy unless and until the insurer provides sufficient evidence to support its decision that the insured is no longer disabled. Provident Casualty responds, among other things, that the fact that the law differs between Florida and another jurisdiction does not in itself bar application of foreign law. <u>See</u> <u>Herron v. Passailaigue</u>, 110 So. 539, 542 (Fla. 1926) (public policy interest must be of "paramount importance" to warrant application of Florida law); <u>see also</u> <u>Sturiano v. Brooks</u>, 523 So. 2d 1126 (Fla. 1988) (applying *lex loci contractus* and holding that New York law applied even though New York law precluded one spouse's recovery in an action against the other spouse unless the insurance policy expressly provided for the claim, and Florida law did not have that limitation).

17

previously, "the particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis . . . . This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given. . . ." Martinez v. Rodriquez, 394 F.2d 156, 159 n.6 (5th Cir. 1968). To assist the Florida Supreme Court in its determination, the entire record in this case, together with copies of the briefs of the parties, are transmitted herewith.

III.

As for Shaps' remaining objections, we find no merit in them, and therefore resolve them at this time.[6]

First, Shaps contends that the district court erred by allowing Provident Casualty to maintain that the policy required Shaps to submit proof of loss forms every thirty days as a precondition to payment for each month of claimed disability. Shaps argues that there was nothing in the policy that required her to provide proof of loss claims every thirty days throughout the course of her total disability. She cites the language in her policy stating that "[i]f the policy provides for a periodic payment for a continuing loss, you must give us written Proofs of

---

[6]These objections concern New York and federal law, not Florida law.

18

Loss within ninety (90) days after the end of each period for which we are liable."

She also cites Panepinto v. New York Mutual Life Insurance Co., 688 N.E.2d 241

(N.Y. 1997), in which the court rejected an insurer's argument that similar

language in the policy before it meant that the insured must file proof of loss

claims no later than ninety days after the end of each monthly time frame for which

the policy is obligated to pay benefits. Shaps argues that reversal is required

because Provident Casualty improperly argued that Shaps was required to file

monthly proof of loss claims, and improperly questioned her about the fact that she

did not always file monthly claims.

Provident Casualty responds that Shaps' trial counsel failed to object to

Provident's argument and cross-examination on this issue at trial, and cannot now

raise the issue on appeal. Provident also argues that the Panepinto court's analysis

only concerned the timing of proof of loss forms as they affected the relevant

statute of limitations. Provident Casualty quotes from the opinion:

> Concededly, the construction of the language that we embrace here
> could postpone the commencement of the limitations period
> indefinitely while the insured remains continuously disabled. . . . We
> reject New York Life's contention that this interpretation will open
> the floodgates to stale claims. In this respect, we agree with the
> analysis of the Supreme Court of Minnesota: "An insured is not likely
> to wait years before filing proof of loss because he would want to
> receive benefits as soon as possible."

19

Id. at 388. Even under Panepinto, according to Provident Casualty, submission of proof of loss is still a condition precedent for payment of a claim. In addition, Provident Casualty highlights unique language in Shaps' policy providing: "Time of Payment of Claims -- After receiving written proof of loss, we will pay monthly all benefits then due you for your disability."

Shaps did not object in the district court to the argument and cross-examination she now argues was erroneous. Moreover, Shaps has not provided any record citations for the argument and cross-examination questions to which she now objects. This Court has held that "[w]hen no objections are raised, we review the arguments for plain error, but a finding of plain error 'is seldom justified in reviewing argument of counsel in a civil case.'" Oxford Furniture Companies, Inc. v. Drexel Heritage Furnishings, Inc., 984 F.2d 1118, 1128 (11th Cir. 1993). A new trial may be ordered only "when the interests of substantial justice are at stake." Id.

Shaps has failed to demonstrate that Provident Casualty's argument and cross-examination were plainly erroneous. The court in Panepinto did hold, in the context of determining the limitation period on the plaintiff's claim, that "'period of disability' does not mean a monthly segment of the disability, but rather the entire period of disability for which benefits are available under the policies." 688

N.E.2d at 244.  The Panepinto court did not, however, consider a provision like the one in Shaps' policy providing that "[a]fter receiving written proof of loss, we will pay monthly all benefits then due you for your disability" (emphasis added).  This language in Shaps' policy is ambiguous, and could fairly be interpreted to mean that written proof of loss is indeed required in the manner Provident suggests.  Given this ambiguous language, we cannot conclude that the district court plainly erred by allowing Provident Casualty to propose that the policy required Shaps to submit proof of loss claims every thirty days.

Second, Shaps argues that the District Court erred by admitting hearsay evidence.  Specifically, she asserts that the district court should not have allowed Provident's counsel to cross-examine her regarding her applications for life insurance policies.  Shaps contends that the documents contain hearsay and double hearsay because the statements made in the documents were not made by her.

A "district court's evidentiary rulings are not subject to disturbance on appeal absent a clear abuse of discretion."  United States v. Sellers, 906 F.2d 597, 601 (11th Cir. 1990).  Shaps has failed to demonstrate that the district court clearly abused its discretion in admitting this evidence.   The documents about which Shaps complains include Kemper Life insurance policy and application file, which

21

included five documents that were signed by her. The documents contained statements indicating that Shaps was not continuously disabled from 1990 through 1994. Provident Casualty's counsel cross-examined Shaps about the documents after Shaps' counsel questioned her about preparation of the documents. Shaps suggests that the documents were hearsay simply because she did not fill them out. But there is no question here that the life insurance policy and application about which Shaps was questioned were signed by her and prepared as part of her application for a life insurance policy. Moreover, Shaps' counsel initiated the discussion of the documents on direct examination, opening the door to further inquiry. Accordingly, the district court did not abuse its discretion in allowing Shaps to be cross-examined about statements contained in the Kemper life insurance policy that she admittedly took out and signed.

Third, Shaps argues that the district court erred by allowing Provident Casualty to admit evidence of Shaps' financial condition. Shaps argues that under this Court's law, as well as the laws of Florida and New York, a jury may not be informed of the wealth or poverty of the parties, and Provident's attempt to portray Shaps as someone who is not in financial need of disability benefits was a prejudicial attempt to sway the jury against her.

Provident Casualty responds that Shaps opened the door to cross-examination on her financial condition when her counsel remarked in his opening statement that Shaps "had been expecting to receive her check from Provident that she had been relying upon to meet her needs, her financial needs." In addition, on direct examination, Shaps testified about her income tax returns, a life insurance policy and a trust established for her sons, and her inability to pay for treatment because her COBRA insurance had run out. Provident Casualty argues that it cross-examined Shaps on statements she made in her income tax returns as to her occupation, and also to counteract her assertion on direct examination that she could not afford therapy when she contemporaneously made a lump sum payment of $95,000 on her mortgage.

The district court did not abuse its discretion in allowing Provident Casualty to question Shaps about the statements on her tax returns about her occupation and about her mortgage payment. This Court has held that a jury should not be advised about the wealth or poverty of the parties, although it noted that there are exceptions to this general rule. See Warren v. Ford Motor Credit Co., 693 F.2d 1373, 1378 (11th Cir. 1982). Here, however, Shaps initiated the discussion of her financial condition, through her counsel's claim that she was financially dependent on the benefits as well as her own testimony that she could

not afford therapy. Although Shaps argues that Provident Casualty questioned her about these issues in an attempt to portray her as someone who is not in financial need of disability benefits as a prejudicial attempt to sway the jury against her, Shaps' opening statement and testimony on direct that she was in financial need of the benefits was itself an attempt to sway the jury. Provident Casualty was essentially responding to Shaps' assertions. Accordingly, the district court did not abuse its discretion in admitting this evidence.

Finally, Shaps argues that the district court erred by rejecting her proposed jury instruction on her theory of waiver. In essence, Shaps contends that Provident Casualty waived its right to insist on compliance with any asserted condition precedent regarding continuous submission of monthly proof of loss forms, by wrongfully terminating her disability benefits in 1990 and thereby committing an anticipatory breach of contract. Shaps cites to both New York and Florida caselaw holding that once an insurer disclaims liability the insured is excused from fulfilling any obligations under the policy and the insurer otherwise waives its rights under the policy. See Reed v. Commercial Union Ins. Co., 468 N.Y.S.2d 738, 739 (N.Y. 1983); Leonardo v. State Farm Fire and Cas. Co., 675 So. 2d 176, 178 (Fla. 4th Dist. Ct. App. 1996); Wegener v. International Bankers Ins. Co., 494 So. 2d 259 (Fla. 3d Dist. Ct. App. 1986).

Shaps' proposed jury instruction stated:

If, however, you find that by the greater weight of the evidence the Defendants, Provident Life and Accident Insurance Company and/or Provident Life and Casualty Insurance Company, did have clean hands, then you must next decide whether the Defendants, Provident Life and Accident Insurance Company and/or Provident Life and Casualty Company, by their own conduct have waived the provisions of the policy requiring the Plaintiff, Audrey Shaps, to be under the care and attendance of a physician, and submit proofs of loss. Waiver is the voluntary and intentional relinquishment of a known right. If the greater weight of the evidence shows that Defendants, Provident Life and Accident Insurance Company and/or Provident Life and Casualty Company, have waived its right to require that Plaintiff, Audrey Shaps, be under the care and attendance of a physician and to submit proofs of loss then you should rule against the Defendants on their defense that Plaintiff, Audrey Shaps, failed to comply with conditions precedent to the policy. If, however, you find that the Defendants, Provident Life and Accident Insurance Company and/or Provident Life and Casualty Insurance Company, did not waive their rights you must determine whether the Plaintiff, Audrey Shaps, complied with the conditions precedent to the policy.

Provident Casualty responds that the cases cited by Shaps are inapposite because none involve disability insurance and all involve an attempt by the insurer to void, cancel, or rescind the policy at issue; that is, a repudiation. Provident Casualty argues that the evidence at trial was inconsistent with a repudiation because it advised Shaps that it would review the claim further if she supplied additional medical facts, because Shaps continued to pay premiums, and because Provident Casualty paid benefits on Shaps' December 1994 claim. Provident Casualty also observes that Shaps did receive a jury instruction on waiver based on

25

a request by Shaps' counsel on the morning of closing arguments. That jury instruction stated:

> [A] policyholder may not be required to perform conditions on time which are futile. If you find that Provident refused to honor Shaps' claims in an unconditional way, you may find that any subsequent omission in filing proofs of claim for the continuance of the same disability was waived by the conduct of Provident.

Jury instructions are reviewed only for abuse of discretion. See Roberts & Schaefer Co. v. Hardaway Co., 152 F.3d 1283, 1295 (11th Cir. 1998). The instructions and the verdict form will be affirmed so long as they are sufficiently instructed and do not mislead the jury, even if an isolated clause is inaccurate, ambiguous, or incomplete. See Watkins v. Bowden, 105 F.3d 1344, 1356 (11th Cir. 1997). A district court's refusal to give a requested instruction "is error only if the requested instruction is correct, not adequately covered by the charge given, and involves a point so important that failure to give the instruction seriously impaired the party's ability to present an effective case." See Wood v. President and Trustees of Spring Hill College, 978 F.2d 1214, 1222 (11th Cir. 1992).

We find no reversible error. As Provident Casualty points out, the decisions cited by Shaps are inapplicable to her case. For example, in Reed, the plaintiff obtained an insurance policy covering an apartment building she owned against loss due to fire. The building suffered fire damage and the insurance company

26

disclaimed liability on the ground that the policy had been cancelled a month before the fire. The court held that once an insurer disclaims liability, an insured is excused from fulfilling any of the obligations under the policy. 468 N.Y.S.2d at 739. In this case, however, Provident Casualty did not repudiate the policy. Instead, Provident Casualty found that Shaps was no longer disabled at that particular time, and it stated that it would reconsider the claim if Shaps had additional evidence. Shaps continued to pay on the policy, and Provident Casualty paid benefits on her later claim. Accordingly, there was no repudiation and Shaps was not necessarily excused from complying with the policy's conditions precedent.

Moreover, the district court did instruct the jury that a policyholder may not be required to perform conditions which are futile. Because the law cited by Shaps applies only in cases where a contract is repudiated, and also because the instruction on futility adequately covered the issue of waiver and Shaps' obligation to fulfill conditions precedent, on the record before us we cannot say that the district court abused its discretion in declining to give Shaps' requested jury instruction. Accordingly, on this issue as well, the district court did not commit reversible error.

To summarize, we find all of Shaps' objections to be insufficient on this record, save one regarding the burden of proof. With respect that issue, we certify to the Florida Supreme Court a pair of questions relating to the proper allocation of the burden of proof. We therefore withhold final decision about the district court's entry of judgment in Provident Casualty's favor until we receive the answer to these questions.

**QUESTIONS CERTIFIED.**